No. 32,605

VIRGINIA POOL, by Her Father and Next Friend, JOHN POOL, *Appellee*, v. MONT DAY, as Administrator of the Estate of James Brady, Deceased, *Appellant*.

(53 P. 2d 912)

Opinion filed January 25, 1936.

*Robert C. Foulston, George Siefkin, Sidney L. Foulston, Lester L. Morris, George B. Powers, Carl T. Smith, C. H. Morris,* all of Wichita, and *Harry O. Janicke,* of Winfield, for the appellant.

*W. L. Cunningham, D. Arthur Walker, Fred G. Leach* and *Wm. E. Cunningham,* all of Arkansas City, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This was an action against the estate of the driver of an automobile by a guest to recover damages for personal injuries suffered in an automobile accident in Oklahoma caused by the alleged negligence of the driver.

The case was here before and the decision therein is reported in 141 Kan. 195, 40 P. 2d 396. The main question determined in the earlier decision was as to the jurisdiction of the Kansas court, which obtained jurisdiction of the parties, to hear and determine the common-law liability of the defendant for injuries sustained in an automobile accident in Oklahoma, which state did not have a guest statute. The case was reversed and sent back for another trial because we thought the verdict was excessive, which was possibly the result of admission of objectionable evidence. In the last trial no evidence of the same kind was introduced nor admitted in the record. The verdict for plaintiff in the first trial was $12,500 and in the last $12,063.55.

A supplemental petition was, by leave of court, filed by plaintiff shortly before the second trial. It alleged as the result of the injuries sustained by reason of the accident and the long confinement of the plaintiff on her back in bed, other developments necessitating two abdominal operations which were recently performed at considerable expense, physical and mental pain, worry and anxiety. The injury set out in the original petition was principally to her right leg, left arm, right ear, disfigurement, strains, bruises and contusions.

Appellant makes seven assignments of error, but embraces them in four questions involved: (1) Did the protest or scream of the plaintiff immediately prior to the collision, after traveling at the same rate of speed for some distance, relieve plaintiff from contributory negligence and make the driver liable? (2) the admission of experimental evidence as to the space in which the car could have been stopped without sufficient preliminary evidence of similarity or identity; (3) the excessiveness of the verdict; and (4) the necessity of a special instruction where there was evidence of probable loss of memory as to facts preceding the accident.

There was evidence introduced in this trial along four lines that was not in the former case, viz., (1) that which went toward proving the allegations of the supplemental petition as above stated, (2) that which showed the time and distance in which a car could be stopped at different speeds, (3) evidence of the appearance, attitude and conduct of the occupants of the car immediately before the accident furnished by two ladies who passed the car just before the accident, and (4) expert evidence as to the probable loss of memory of facts preceding the accident where the witness has been rendered unconscious by the accident. The first two lines of new evidence were introduced by the plaintiff and the last two by the defendant.

It is unnecessary to go into detail as to the evidence that was introduced at both trials. Our sending the case back for a retrial was a recognition of the sufficiency of the evidence in that case to support the finding of negligence on the part of the driver and the want of contributory negligence on the part of the plaintiff.

Substantially the same evidence, with a few inconsistencies and the additional features and lines above mentioned, induced the jury under the instructions of the court to make the following answers to special questions in addition to its general verdict for the plaintiff for $12,063.55:

"1. What was the rate of speed of the Brady automobile prior to the accident? A. Sixty miles per hour.

"2. For how long a distance had such rate of speed been maintained? A. From one half to three fourths miles.

"3. Was the rate of speed found by you in answer to question No. 1 a careful and prudent rate of speed? A. No.

"4. Were any protests or remonstrances made by Virginia Pool, Sue Chaffee or Chas. Vaughan to James Brady about the speed of the car, and if so who made the said protests? A. Yes, Virginia, at or about second sign from north between sign and impact. Scream. Sue Chaffee after turned down south

of Blackwell Junction, stop, about to blow us out of car. Chas. Vaughan before and after Blackwell Junction. Slow, you are blowing girls' hair, or words to that effect.

"5. If you find that Charles Vaughan protested, where was the car when the protest was made and what was said? A. At or near Blackwell, and said, slow down, you will blow girls' hair down, also after turned south of Blackwell Junction, stop, you are about to blow us out of the seat.

"6. If you find that Sue Chaffee protested, where was the car when the protest was made, and what was said? A. Just after turned south of Blackwell Junction and she said, slow down, about to blow us to pieces, or words to that effect.

"7. If you find that Virginia Pool protested, where was the car when the protest was made, and what was said? A. She screamed at some point between second sign from north and point impact.

"8. Of what, if any, negligence was the driver, Brady, guilty? A. Driving fast, not heeding signs of warning on highway, not due regard to traffic, reckless driving.

"9. If you find for the plaintiff and against the defendant, then state how much you allow the plaintiff for each of the following items:

| | |
|---|---:|
| Winfield Hospital | $407.95 |
| Ponca City Hospital | 389.10 |
| Dr. H. L. Snyder  Dr. Howard Snyder  Dr. Cecil Snyder | 395.25 |
| Doctor McElroy | 291.00 |
| Doctor Vance | 167.00 |
| Doctor McCue | 35.00 |
| Nurse Alig | 220.00 |
| Two ambulances services, $15 and $3.75 | 18.75 |
| Medicine, medical supplies, crutches, electric pad and appliances, not including medical supplies furnished by the Winfield Hospital and Ponca City Hospital | 78.00 |
| Past and future pain and suffering, including embarrassment and mortification, if any, arising from disfigurement | 4,500.00 |
| Clothing damaged and destroyed in accident | 61.50 |
| Permanent injuries, including therein physical injury and impairment of earning ability resulting therefrom; injuries to nervous system and mental injury and impairment not including any amount for impairment and mortification arising for disfigurement | 5,000.00 |
| Future medical and surgical expenses | 500.00 |

"10. Was the manner in which James Brady operated and controlled the car a direct and proximate cause of the accident? A. Yes."

Our attention is directed to the fact that the making of protests was disputed by one witness and called in question by two others from their observation and the appearance of the parties, but such only furnishes a conflict of testimony and leaves the matter to the jury, which found in favor of protests having been made.

Again it is urged that what the jury found were not protests, and if they were, they occurred too late to be effective. The court

in its instruction No. 6 refers to such matters as "remonstrance" or "warning of danger," which have substantially the same meaning as protests. In the testimony it is found that the attorneys on both sides and the witnesses used the word protest. Counsel for appellant, however, has in mind, as stated in the brief, that the "scream" of the plaintiff was made too late to do anything and therefore should not be classed as a protest. The jury found this scream of the plaintiff was made at some point between the second sign from the north and the point of impact, and the testimony of one or more witnesses fixes the location of this second sign from the north at approximately 135 yards from the cement turn, which is about 50 yards from the underpass where the accident occurred. The answer of the jury is not definite as to exactly where the scream was made in this intervening distance. This answer should be considered in connection with the other answers made by the jury as to "protests" made earlier by others in the party, and the other findings of negligence, such as "reckless driving," will cover the failure to heed the protests or warnings given by plaintiff and others in the party. The allegations of the petition are such as would plainly come under the head of reckless driving.

This case is unlike the case of *Balandran v. Compton*, 141 Kan. 321, 41 P. 2d 720, where the jury found the negligence to be such as was not charged in the petition, which eliminated all the other features of negligence.

Some of these alleged features of negligence, as well as some of those same ones named in the answer to question No. 8, can apply only to the driver.

It was held in the case of *Howse v. Weinrich*, 133 Kan. 132, 298 Pac. 766, that the petition stated facts sufficient to show the host was negligent and even reckless in operating the automobile, and that upon demurrer to the petition the court was not able to declare that the guest was guilty of contributory negligence because he was asleep at the beginning of the mishap resulting in his injury.

The case of *Koster v. Matson*, 139 Kan. 124, 30 P. 2d 107, is not quite applicable here because it was under the special guest statute of Nebraska, and although the general verdict and one of the answers to the special questions found the plaintiff not guilty of contributory negligence, yet the other special findings established contributory negligence. That is not the situation in the case at bar, but if her screaming was very late, as appellant maintains, the

ruling in the case of *Link v. Miller*, 133 Kan. 469, 300 Pac. 1105, would be more nearly applicable.

"Where a passenger in an automobile could not see her apparent danger till a few seconds before the collision which caused her injury occurred, and the evidence showed that any efforts which she might have made to avoid the injury would have been unavailing, her failure to do anything to prevent the collision is not such contributory negligence as to bar her recovery of damages for injuries sustained therein." (Syl. ¶ 3.) (See, also, *Webb v. Lipperd,* 134 Kan. 764, 8 P. 2d 381.)

The argument of the appellant would be more nearly convincing if the only element of negligence found was speed, but that is only one of four.

Appellant urges strongly that there was error in the admission of experimental evidence without a preliminary showing of similarity or identity of condition. The evidence showing the distance at which an automobile could be stopped when traveling at certain rates of speed was based upon experiments made with a car of a different make than the one in which the accident occurred. It was made later than the other car and had the same kind of brakes, but with greater square-inch braking surface. Appellant insists that such evidence is incompetent unless based on similar or identical instrumentalities. This could practically never be found. Even the same automobile, if repaired, would be different after being repaired than it was when new. Seldom could two cars be found that would be substantially alike in operation. This difference goes to the weight of the testimony rather than to its competency.

In the case of *Leinbach v. Pickwick Greyhound Lines,* 135 Kan. 40, 10 P. 2d 33, it was held:

"Error based on the admission of evidence touching the strength of an automobile like that of plaintiff to endure being capsized without serious damage considered, and held nonprejudicial." (Syl. ¶ 6.)

In 22 C. J. 759 under the heading of Similarity of Conditions it is said:

"It is not necessary, however, that the conditions should be exactly identical, but a reasonable or substantial similarity is sufficient, and the lack of exact identity affects only the weight and not the competency of the evidence, provided always that there is such a degree of similarity that evidence of the experiments made will accomplish the desideratum of assisting the jury to an intelligent consideration of the issues of fact presented."

This experimental evidence was met with the facts of difference which would enable the jury to make the proper comparison.

The next proposition submitted is that the verdict is excessive. We said in the former hearing of this case on page 203:

"Without minimizing in any way the seriousness of the personal injury of this plaintiff, we are constrained to hold the verdict is excessive. Counsel for plaintiff cites a larger verdict in a similar case, but many smaller ones can be cited, and the question is, under all the facts and circumstances of the case, is it fair and reasonable or is it excessive? We think it is excessive at $12,500."

This verdict is $436.45 less, and plaintiff has introduced considerable evidence as to subsequent abdominal operations for two physical troubles, only one of which, however, under the surgeon's opinion could reasonably be traced to the accident or the prolonged and confining treatment of the patient, keeping her on her back in bed for several weeks.

Appellant raises no question as to any of the items in the long list to which the jury gave answers in special question No. 9, except the three items near the last of those answers, where the amounts allowed are $4,500, $5,000 and $500. The first amount is allowed for past and future pain and suffering, including embarrassment and mortification, if any, arising from disfigurement. The next is for permanent injuries, including physical injury and impairment of earning ability resulting therefrom, injuries to nervous system and mental injuries. The third is for future medical and surgical expense.

We have had difficulty in trying to locate in the abstract of the evidence the necessary items to make the full amount allowed in the third allowance, but possibly it may not be necessary to have detailed items to make up this amount any more than the others, as all of them refer in part at least to the future. It is difficult to conclude that there is not an overlapping in the first and second items, but strictly speaking there may not be.

We are furnished with numerous citations of decisions in this state and others on the question of excessive verdict, some of them stating the general rule that to be excessive it should shock the conscience of the court, and others giving the amounts of verdicts held to have been excessive and otherwise.

Counsel for appellee cites a rule of life expectancy and another rule based on higher standards of living, increased cost of food products and reduced rates of interest on investments, citing the fact that English history shows a gradual advance in the amounts approved by the courts as being not excessive. Every true citizen

should hope for such forward movement in the standards of living, but the real question here is, where are we now? If this verdict is right for this cultured and refined young lady, accustomed no doubt to many superior comforts and privileges of home life and pleasures, what will be the proper amount for an average citizen suffering similar injuries tomorrow? If it is proper to consider the increased cost of food, we may properly think at the same time of the millions of unemployed and also of the ordinary ability of the average citizen to pay a verdict of this size. This case may be more serious and more deserving than many, or most others, but if we think the amount allowed by the jury is more than we sincerely believe we would feel justified in allowing the average citizen for the same injuries, we should hold it to be excessive. We think, as we did before, that the verdict in this case is excessive, and we believe it should be reduced by $2,000. Although the excess is frequently charged as the result of certain passion and prejudice, yet such connection is not necessary, as was held in *Leinbach v. Pickwick Greyhound Lines*, 138 Kan. 50, 69, 23 P. 2d 449.

The fourth proposition urged as error by the appellant is the refusal of the trial court to give one of the two instructions requested by defendant on the medical and scientific question as to the loss of memory of events which occurred immediately before the witness became unconscious by reason of a concussion. This was called by the medical expert witnesses retrograde amnesia, and it was intended to be made applicable to only one witness in this case, viz., the plaintiff. One witness described this term as a low-grade type of loss of memory due to excitement or shock, and said the time it extended back of the beginning of the unconsciousness depended upon the severity of the concussion. The trial court properly admitted this evidence, and gave the jury the general instruction as to the weight of the evidence, the credibility of the witnesses and their means of knowing the things about which they testified, which in a general way covered the specific matter as to the loss of memory of the plaintiff of events occurring before the concussion. Either one of the instructions on this line requested by the defendant would be singling out the expert evidence as to plaintiff, which is contrary to the rule in this state, where the court is not permitted, as in some other courts, to discuss the details of the testimony. In the case of *Smart v. Railway Co.*, 80 Kan. 438, 102 Pac. 253, it was said:

"The fourth request singled out a particular circumstance, held it up before the jury, told them to take it as evidence, and told them its weight and effect under certain conditions. Of course this request was properly denied." (p. 439.)

In the case of *Hill v. Railroad Co.*, 113 Kan. 489, 215 Pac. 310, where the physicians said the plaintiff's brain was severely injured, the court gave the following special instructions:

" 'There is some testimony before you gentlemen, produced here by experts. With regard to this testimony, I may say, it is here to help, aid and assist you in arriving at what this man's condition is or was at the time the examinations were made, and assist you in determining what, if any, is the damage that he has sustained. . . .' " (p. 491.)

The judgment was reversed on account of the same, and the court said in the opinion on page 492:

"The testimony of experts should be considered like any other testimony, not singled out and given special significance. It is subject to the same tests and should receive as much weight and credit as the jury may deem it entitled to when viewed in connection with all the circumstances of the case."

In *Haines v. Goodlander*, 73 Kan. 183, 84 Pac. 986, it was held:

"The court should be careful not to mislead the jury by singling out and giving undue prominence to a particular fact in the case, nor by unduly emphasizing the contentions of either party, but it is often necessary and proper for the court to speak of important features in the evidence, and advise the jury as to the rules of law applicable to such facts." (Syl. ¶ 6.)

We find no error in refusing to give such instructions.

The judgment of the district court is modified, provided plaintiff assents to the modification by reducing the judgment $2,000, the appellee being given the election to accept such reduced amount or a new trial. As modified the judgment is affirmed.

SMITH, J. (dissenting): I dissent from that portion of the opinion wherein the judgment of the trial court is reduced $2,000. The duty of appellate courts is to pass on law questions submitted to it. There should be a rule by which the action of the court is guided. Here there is no rule. There can be none. The very language of this opinion precludes the existence of such a rule. To say the amount shocks the conscience of the court means nothing. If the judgment is too great why not reduce it by half? There is just as much reason for the one amount as the other.

WEDELL, J. (dissenting): I dissent to the remittitur portion of the judgment, as no satisfactory reason appears to my mind for reduc-

ing this judgment. The total verdict was for $12,063.55. Medical and hospital expenses, nurse hire, ambulance services, doctor bills, future medical and surgical expenses, amounted to $2,502.05. Damage to clothing was $61.50, causing a total expense of $2,563.55. Thus the net verdict is $9,500. That amount does not impress me as being excessive. It does not shock my conscience.