**CHICAGO & N. W. RY. CO. v. GOLAY**
(two cases).

Nos. 3195, 3196.

Circuit Court of Appeals, Tenth Circuit.

May 21, 1946.

Rehearing Denied July 2, 1946.

R. R. Rose, of Casper, Wyo. (Nye F. Morehouse, of Chicago, Ill., Warren Newcome, of St. Paul, Minn., and James B. O'Shaughnessy, of Chicago, Ill., on the brief), for appellant.

W. J. Wehrli, of Casper, Wyo. (W. H. Brown, Jr., and Madge Enterline, both of Casper, Wyo., and John J. McIntyre, of Cheyenne, Wyo., on the brief), for appellees.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

BRATTON, Circuit Judge.

These are railroad crossing cases. Fred Golay and Ruth Golay, husband and wife, sustained personal injuries as the result of a collision between the automobile in which they were riding and a passenger train of the Chicago and Northwestern Railway Company. Separate actions for damages were instituted. The issues joined were negligence and contributory negligence. The actions were consolidated for trial before the court and a jury, resulting in separate verdicts and judgments for plaintiffs. Defendant appealed, and the cases are here on a single record and were submitted together. For convenience, plaintiffs in the trial court will be referred to as plaintiffs or by their individual names, and the defendant will be referred to as the company.

The accident occurred at the point where Elk Street in Casper, Wyoming, and the main track of the company intersect. Two other tracks cross Elk Street. They are denominated in the record as the industrial and the spur tracks, respectively. The main and the industrial tracks are parallel and extend east and west, while the spur track runs in a somewhat southeasterly and northwesterly direction. The industrial track is about 13 feet north of the main track, and the spur track is about 87 feet north of the industrial track or about 100 feet north of the main track. Elk Street extends generally north and south. Yellowstone Highway runs generally east and west and is located north of the tracks. Elk Street and Yellowstone Highway intersect at a point approximately 400 feet north of the main track. The country is generally flat and open. The area east of the street, and that west of the street and south of the tracks, was practically vacant and the view unobstructed. A

building owned and used by The Keyes Tank Company, and numerous stacks or piles of heavy material and equipment consisting of I-Beams, angle irons, sheet metal, tank steel, steel girders, rings of tanks and various field equipment, were located west of the street and north of the main track of the company. The building was about 48 feet by 31 feet, with a lean-to of 16 feet by 21 feet, and it was about 25 feet in height. The land on which the building and stacks of material were located belonged to the railway company and was leased to the tank company; and the building and stacks of material belonged to the tank company. A gondola car was standing on the industrial track west of the street, and the employees of the tank company were engaged in moving a tank from the rear of the building toward the street. The tank was about 6 feet in diameter, 12 feet in length, 6 feet in height, and was suspended from two gin-poles on an A-frame at the rear of a winch truck. A plank extended 8 or 10 feet in front of the truck and a man was sitting on the front end of the plank to counteract the weight of the tank at the rear of the truck. The plank was low enough that the man's feet touched the ground, and immediately preceding the accident he had almost reached the west edge of the oil mat of the street. There was an ordinary crossbuck railroad crossing sign west of the street at a point about 130 feet north of the main crossing, and a similar sign east of the street and south of the crossing; but there were no gates, flagman, flash signal, wigway, or other mechanical warning at the crossing. Plaintiffs went from their home in Glenrock to Casper. They arrived in Casper shortly after ten o'clock in the forenoon. The windows of the car were closed, except the ventilation windows, and the radio in the car was on. They turned from Yellowstone Highway into Elk Street and drove south to the crossing of the main track. They were going about 20 or 25 miles per hour when they turned off the highway and into the street, but they slowed down and were going only about 10 or 15 miles per hour when they reached the crossing. Fred Golay was driving, Ruth Golay was beside him in the front seat,

and their daughter was in the rear seat. The eastbound passenger train consisted of a gas-electric motor car and one coach. After the automobile and the train collided at the crossing, the car was carried along beside or with the train for a distance of 100 feet or more where it was stopped and plaintiffs were removed from it in their injured condition.

■ The court submitted to the jury the question whether the failure of the company to maintain gates, flagman, or flash signal at the crossing constituted negligence which was the proximate or one of the proximate causes of the accident. The submission of that question is challenged on the ground that there was no substantial evidence showing that the crossing was an unusually hazardous one which reasonably required the maintenance of any of such protective facilities. No statute of Wyoming has been called to our attention which requires a railroad company to provide a crossing of this kind with any special warning, and there is no general duty at common law to maintain any particular facilities of that kind at a crossing. But the rights of the general public and the rights of the railway company at street crossings are mutual and reciprocal; and, although common convenience gives to trains precedence over automobiles in the use of crossings, it is upon the condition that the company will give due warning of the approach of its trains in order that those in automobiles may stop safely and wait for the trains to pass. What constitutes reasonable and timely warning depends upon the circumstances and surroundings. For instance, the vigilance and care must be greater at crossings in a populous city or town where the travel is great than at ordinary crossings in the country. And, as a general rule, whether reasonable care and prudence require under all the circumstances that special warning facilities be maintained at a crossing in a city or town is a question of fact for the jury. Grand Trunk Railway Co. v. Ives, 144 U.S. 408, 12 S.Ct. 679, 36 L.Ed. 485; Chesapeake & Ohio Railway Co. v. Steele, 6 Cir., 84 F. 93; Evans v. Erie Railroad Co., 6 Cir., 213 F. 129; Northern Pacific Railway Co. v. Moe, 8 Cir., 13 F.2d 377;

Cincinnati, New Orleans & Texas Pacific Railway Co. v. Champ, Ky., 104 S.W. 988; Toeneboehn v. St. Louis-San Francisco Railway Co., 317 Mo. 1096, 298 S.W. 795; Homan v. Missouri Pacific Railroad Co., 334 Mo. 61, 64 S.W.2d 617, certiorari denied 291 U.S. 683, 54 S.Ct. 561, 78 L.Ed. 1070.

■ Here, the traffic on Elk Street was quite heavy, especially during school. The children of about 200 families attended Elk Street School, and about half of them crossed the tracks in going to and coming from the school. Some of them walked and others traveled by school buses which crossed the tracks four times a day. Employees of two oil companies crossed the tracks in going to and from their work, and others used the street as a highway. The evidence presented sharp conflicts in respect to the distance of the building from the street, the extent and height of the stacks of material and equipment, the location of the gondola car, particularly its distance from the street, the location of the truck and tank in relation to the gondola car and the street, and the extent to which these structures and objects obstructed the view of one coming along the street from the north in seeing a train approaching from the west. We shall not stop to detail the testimony of the various witnesses who testified concerning the matter. It is enough to say that whether all of the circumstances in their composite effect were enough to require the company in the exercise of ordinary care and prudence to maintain special warning facilities at the crossing was a question for the jury.

■ Another issue of negligence submitted to the jury was whether the train approached the crossing at an excessive rate of speed, and if so whether the speed was a proximate cause of the accident. The company contends that the submission of that issue was error because there was no substantial evidence on which to predicate its submission. There was a conflict in the evidence as to the speed of the train. The evidence offered by plaintiffs tended to show that the train was moving at 30 to 35 miles per hour and that its speed was increasing, while the evidence of the company fixed the speed at 15 to 18 miles per hour. It was the province of the jury to resolve the conflict, and the general verdicts amounted to a determination of it in favor of plaintiffs. But the company argues that even though the train was moving at 30 to 35 miles per hour, and even though that speed was excessive, the speed was not the proximate cause of the accident. Excessive speed of an automobile or a train, considered alone and apart from other circumstances, is not always necessarily negligence which proximately brought about the accident resulting in injury, or contributed to it. Speed, unrelated to other circumstances, sometimes is merely a condition of the accident, remote in the chain of causation, and therefore does not constitute negligence with resulting liability in damages. O'Mally v. Eagan, 43 Wyo. 233, 2 P.2d 1063, 77 A.L.R. 582; Burlie v. Stephens, 113 Wash. 182, 193 P. 684; Whalen v. Dunbar, 44 R.I. 136, 115 A. 718. But in a case of this kind, what amounts to excessive speed of a train in passing over a crossing depends upon the surrounding circumstances. The speed at which the train approached the crossing, the volume of traffic on the street, the nature and extent of the obstructions of view on the west side of the street, and the other circumstances which existed at the time, considered in their totality, presented an issue for the jury as to whether the speed of the train was excessive, and if so whether it was the proximate cause or one of the proximate causes of the accident. Bilton v. Southern Pacific Co., 148 Cal. 443, 83 P. 440; Young v. Pacific Electric Railway Co., Cal.Sup., 279 P. 438; St. Louis-San Francisco Railway Co. v. Rundell, 108 Okl. 132, 235 P. 491; Herrell v. St. Louis-San Francisco Railway Co., 322 Mo. 551, 18 S.W.2d 481; Pentecost v. St. Louis Merchants' Bridge Terminal Railroad Co., 334 Mo. 572, 66 S.W.2d 533.

■■ The third issue of negligence submitted to the jury was whether the whistle was sounded or the bell rung as the train approached the crossing. The company contends that there was no sufficient evidence to take the case to the jury on that issue. The testimony of plaintiffs was in substance that beginning shortly after they

turned from the Yellowstone Highway into Elk Street and continuing until they reached the crossing, they were looking for trains; that they looked to the east and to the west; that they looked several times; that he did not see the train until in the form of a flash just as it struck the car; that she did not see it at all; and that they did not hear any whistle or other warning sound. Two other witnesses testified that they were approaching the crossing from the south; that the windows to their car were closed; that they were 200 or 300 feet from the crossing at the time of the accident; that they saw both the automobile and the train approaching the crossing; that they saw the accident; and that they did not hear any whistle or bell. And the driver of the truck which was hauling the tank testified that the windows of the cab were closed and that he did not hear any whistle or bell prior to the accident. Members of the train crew, two members of the crew engaged in hauling the tank, and two others testified that they heard the whistle, and there was testimony from some of them that the automatic bell was being sounded. Testimony of witnesses merely that they did not hear a whistle or bell is of insufficient probative value to take the issue to the jury when in conflict with positive testimony of other witnesses that the whistle was sounded or the bell rung, unless it further appears from the circumstances, conditions, and surroundings that they were in position to hear and would probably have heard the sound had it been given. Union Pacific Railroad Co. v. Gaede, 10 Cir., 110 F.2d 931; Stephenson v. Grand Trunk Western Railroad Co., 7 Cir., 110 F.2d 401, 132 A.L.R. 455; Kilmer v. Norfolk & Western Railway Co., 4 Cir., 45 F.2d 532, certiorari denied 283 U.S. 824, 51 S.Ct. 347, 75 L.Ed. 1438; Bergman v. Northern Pacific Railway Co., 8 Cir., 14 F.2d 580. But the value of negative testimony depends upon the surrounding circumstances and conditions. And where it appears that the witnesses giving the testimony were alert and vigilant in watching and listening for approaching trains and were so situated and circumstanced that in all probability they would have heard the sound had it been given, the testimony is sufficient to take the case to the jury on the issue, even though there be positive testimony by other witnesses that they heard the whistle and the bell. Union Pacific Railroad Co. v. Burnham, 10 Cir., 124 F.2d 500; Eiseman v. Pennsylvania Railroad Co., 3 Cir., 151 F.2d 222. The testimony here meets these requirements. Plaintiffs were attentive, alert, and watchful in respect to the approach of trains. The attention of the persons in the car approaching the crossing from the south was drawn to the car in which plaintiffs were approaching the crossing, and their attention was also directed to the train as it approached. They were looking at the car and the train immediately prior to the collision. They were not inattentive. None of the four heard either whistle or bell. And their testimony was corroborated in some measure by that of the driver of the truck, even though it does not appear that he was attentive to the approach of the train.

By instructions to which no exceptions were taken, the court submitted to the jury the issue of contributory negligence on the part of the plaintiffs and the general verdicts in effect resolved the issue in their favor. But the company contends that each of them was guilty of contributory negligence as a matter of law in failing to see the train, in the failure of Fred Golay to stop the automobile before reaching the crossing, and in the failure to Ruth Golay to warn her husband of the approach of the trian. The duty of a person approaching a railway crossing to look and listen before crossing the track has been iterated and reiterated so many times that even a brief review of the many cases enunciating the rule would only extend the length of this opinion without serving any useful purpose. And one driving an automobile and those riding with him are obligated to use their eyes and seasonably observe that which is open and apparent, to take notice of obvious dangers, and to govern their conduct as a reasonably careful and prudent person would in the same or similar circumstances. Failure to do that constitutes negligence. But care and vigilance on the part of those traveling the highway in an automobile vary according

to the exigencies which present themselves. Ries v. Cheyenne Cab & Transfer Co., 53 Wyo. 104, 79 P.2d 468.

The facts preceding and attending the accident have been reviewed and need not be detailed again. In a case of this kind, contributory negligence seldom depends upon a single fact or circumstance. Ordinarily, it depends upon many relevant facts and surrounding circumstances, and upon inferences fairly to be drawn from the testimony produced. Viewed in that light, we find no warrant for holding that reasonable minded persons would necessarily reach the conclusion that plaintiffs were at fault in failing to see the train in time for the automobile to be stopped before reaching the crossing, that Fred Golay was at fault in failing to stop the car, and that Ruth Golay was likewise at fault in failing to warn her husband of the approach of the train. In short, we think the question of contributory negligence was for the jury. Grand Trunk Railway Co. v. Ives, supra.

The company tendered and the court excluded the testimony of a witness that a few days prior to the trial he made certain tests in stopping an automobile traveling south on Elk Street toward the crossing; and that moving at certain rates of speed, the car was stopped within certain distances, respectively. The testimony was tendered in support of the plea of contributory negligence, and its purpose was to show that under the facts and circumstances developed in the cases, the automobile of plaintiffs could in the exercise of ordinary care have been stopped before reaching the crossing. The testimony was admissible. Truva v. Goodyear Tire & Rubber Co., 124 Wash. 445, 214 P. 818; Kelly v. Troy Laundry Co., 46 Idaho 214, 267 P. 222; Pool v. Day, 143 Kan. 226, 53 P.2d 912; Beckley v. Alexander, 77 N.H. 255, 20 A. 878; Crecelius v. Gamble-Skogmo, Inc., 144 Neb. 394, 13 N.W.2d 627. But a careful examination of the entire record convinces us that its exclusion did not affect in any manner the ultimate verdicts of the jury and that the error was harmless.

The judgments are severally affirmed.