**Betty BUSH and her husband, Eddie Bush, Appellants,**

v.

**LOUISVILLE & NASHVILLE RAILROAD COMPANY, Appellee.**

No. 17199.

United States Court of Appeals Fifth Circuit.

Nov. 5, 1958.

Peter T. Fay, William S. Frates, Nichols, Gaither, Green, Frates & Beckham, Sam Daniels, Miami, Fla., for appellants.

Bert H. Lane (of Yonge, Beggs & Lane), Pensacola, Fla., Wyatt Johnson (of Hoffman, Kemper & Johnson), Miami, Fla., for appellee.

Before HUTCHESON, Chief Judge, and CAMERON and BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

Emerging from this 900-page record after a jury trial, verdict and judgment which the plaintiffs, Betty Bush, a professional woman golfer, and her husband consider inadequate for injuries sustained when her Thunderbird crashed into a small railway motorcar near Pensacola, Florida, are two simple questions. Did the Court err in (1) giving the usual railroad right of way charge since the railroad vehicle was a small motorcar, not a large train or locomotive, or in (2) failing to give the jury an explanatory illustration of a computation under Florida's railroad comparative negligence statute?

For our purposes, the setting may be briefly summarized. The accident occurred where the Railroad's track crosses U. S. 90A, a main arterial highway. The crossing is protected by gates and flashing lights. The flasher bears a warning "Stop on Red Signal." It is undisputed, indeed the Railroad admits, that the wheels of this small motorcar were insulated so that the car would not activate the gates or flasher. It is likewise uncontradicted that no warning signal of any kind was given by the motorcar as it approached or entered the crossing. A warning signal was impossible for, although apparently regularly equipped with a horn, none was on the motorcar the day of the accident as it had been taken off for repair. The motorcar was approximately five feet long, six feet in height and four feet wide.

There was the usual conflict on the occurrence of the accident itself. According to the plaintiffs, the motorcar

could not be seen until it was 15 to 30 feet from the crossing and it ran through the crossing at an unreduced speed of approximately 30 mph. Mrs. Bush, traveling alone, on seeing this hit her brakes and swerved to the right in an unsuccessful attempt to avoid collision. On the other hand, the Railroad's version was that the motorcar stopped or had virtually stopped a few feet from the crossing. At that time those in the motorcar saw the plaintiff's Thunderbird approaching approximately 200 to 300 feet away. They considered that the approaching Thunderbird was far enough away to permit them to cross the intersection. They fixed the plaintiff's speed at 60 mph. The physical facts show that the motorcar was nearly through the intersection at the time the Thunderbird hit it on its right rear wheel. This knocked the motorcar completely off the track, causing injury to at least one of its occupants as well as the claimed injuries to Mrs. Bush.

There was thus the makings of the everyday run-of-the-mill tort liability case with evidence demanding that the underlying issues concerning the Railroad's fault and the plaintiff's contributory negligence be resolved by the jury. This was done. By its verdict of $5,000 for Mrs. Bush and $650 for her husband (the full amount of incurred medical hospital bills), it is patent that the jury found the Railroad at fault. It may or may not have determined that Mrs. Bush was contributorily negligent. The Railroad insists that the damage phase of the case had such weaknesses that the jury may well have awarded to Mrs. Bush, as presumably it had to the husband for his out-of-pocket expenses, 100% of her actual damages. The plaintiff insists, however, that from the colloquy between Court and two jurors when the jury returned to report some difficulty in connection with its deliberations, it is quite probable that the jury considered Mrs. Bush's damages of a much greater dollar value, and that this $5,000 verdict was the result of their mistaken application of the Court's instructions on Florida comparative negligence.

It is this approach which leads her counsel to urge, with great earnestness and a skill which wrings from it every drop of possible merit, the argument that the two errors, while formally distinct, are interrelated and hence more, not less harmful. That is, if the Court's instructions were erroneous on the Railroad's so-called right of way, it must inevitably have affected the verdict adversely to the plaintiff. First, it subjected the Railroad to a lesser duty which in the comparative balance lowered the Railroad's percentage of contribution. Conversely, if the Railroad had the precedence, it subjected the approaching motorist to the duty to keep clear, and this would enhance the percentage of her contribution.

We may assume that this is correct and that error would certainly not be in the harmless category, F.R.Civ.P. 61, 28 U.S.C.A. There must first be error, however, and here we find none.

The portion of the charge specifically excepted to stated:

"The duties and obligations of a railroad company and of a traveler on the highway at a public crossing are mutual and reciprocal. The trains have the right of way, and it is the duty of a highway traveler to give them precedence, but it is also the duty of a railroad company to exercise reasonable care for the safety of travelers on the highway, to give warning of a train's approach which will be reasonably effective in the circumstances and to have its train or ether machinery under control appropriate to the circumstances."

Not unnaturally this careful Judge considered himself to be on safe grounds for the words complained of were a verbatim repetition of what we declared the law to be in Atlantic Coast Line R. Co. v. Pidd, 5 Cir., 1952, 197 F.2d 153, 155. And the plaintiffs, whether out of a

recognition that the rule as there stated is correct, or because for tactical reasons they are unwilling to undertake what they might regard as a formidable task of seeking an outright reversal of it, do not attack it frontally. The claim is that Pidd does not apply to a railway motorcar and in any case is conditioned on the privileged train first giving warning, see Continental Improvement Co. v. Stead, 1877, 95 U.S. 161, 164, 24 L.Ed. 403, 405; Chicago & N. W. Ry. v. Golay, 10 Cir., 1946, 155 F.2d 842, 844.

We need not determine this in the precise terms of these two contentions. For we do not think that, considering the charge as a whole as must be done, any such idea of a peremptory privilege or right of way was given to the jury. In this analysis without so deciding we may assume, although the Court did not say so literally, that "train" as used in the charge included a railway motorcar.

In the first place, the use of the term "right of way" in Pidd and similar cases is not meant as a grant of a peremptory privilege. It is but a recognition of the physical nature of a railroad. Trains and railway motorcars can run only on tracks. They cannot turn or swerve or duck or dodge save as the track permits. Trains, too, are large and incapable of being stopped as quickly as an automobile, so that motorists must reckon with the fact that when an automobile approaching a crossing comes into the view of an engine crew, the momentum of the train may make it impossible to stop despite immediate and decisive actions. Trains also must, for the public benefit and welfare, adhere generally to schedules without which there would be chaos on the rails and public censure for nonperformance of public duty.

Second, and more important, the brief excerpt of which complaint is now made, and even more so the remaining portions of the charge as a whole, makes plain that heavy duties rest upon the Railroad. The excerpt speaks in terms of duties which are "mutual and reciprocal" and then plainly states that the railroad must exercise reasonable care for approaching travelers, must give effective warning and must have the train (motorcar) under reasonable control.

The charge here was nearly 20 printed pages in length. With great pains it submitted the full theories of the plaintiffs and the defendant. In the concluding part of the charge, obviously constructed with great care in advance, the seven main questions were itemized by number. The first was:

"1. Was there any negligence on the part of the defendant [Railroad] *as alleged*?"

The reference to "as alleged" was significant. Previously the Court had spelled out exactly what the plaintiffs claimed.[1] These claims of fault encompassed those reflected by the proof. These included the entire absence of any warning device by flasher signal or otherwise at the crossing, the absence of any horn or whistle on the motorcar, the manner in which the motorcar ran through the crossing without lookout or regard for closely approaching vehicles, and the like. Several times the Court stated that if the jury from a preponderance of the evidence found the Railroad was negligent "as alleged" they should, on a further finding of proximate cause, return a verdict for the plaintiff.

To laymen comprising the jury this was to say in a way decisive and understandable to them that this very same Railroad as to which a certain "right

---

1. "In this case the plaintiff, Betty Bush, contends that the actionable negligence on the part of the defendant railroad consisted in (a) negligently operating, maintaining or controlling said railroad motorcar, (b) in the negligent construction, operation or maintenance of the railroad crossing at State Road 10 [U.S. 90 A], and (c) in negligently failing to provide adequate warning signals or warnings to approaching motor vehicles or railroad motorcars and traffic on said crossing, and (d) in negligently failing to have said railroad motorcar under such control as to yield the right of way to vehicular traffic proceeding along State Road 10 [U.S. 90 A]."

of way" was ascribed had these other duties to satisfy and a failure was a breach of that duty and hence negligence. Nor did the Court leave this to even such an obvious inference, for immediately preceding[2] the excerpt objected to, the Court spelled out in detail the full nature of the Railroad's manifold duties.

██ On the second point, concerning the failure to give the jury an illustrative example of the comparative negligence statute, plaintiffs candidly state that the error here asserted is not for the giving of the initial charge. This charge,[3] to which no exception was taken, stated the instruction in the words and paraphrase of the Florida statute. The complaint is that when the jury returned because of a reported difficulty in their deliberations, it became evident from questions of two jurors that the jury was con-

2. The Court charged:
"It is the duty of the railroad company to exercise all ordinary and reasonable care and diligence in the operation of its trains to avoid injury and damage to persons and property, and it is your province to determine in this case from all of the evidence whether or not the railroad complied with this duty. The language 'all ordinary and reasonable care and diligence' is not susceptible of any hard and fast definition, but varies with the circumstances and conditions of each particular case. In determining whether the railroad exercised all ordinary and reasonable care and diligence, you may consider the character of the crossing, the amount of travel that might be reasonably expected there, the existence or non-existence of obstructions, the nature and character of warning devices, the existence or non-existence of warning devices, the condition of the track and equipment, the speed of the motorcar in relation to the environment, the signals given of the motorcar's approach. In fact, all of the circumstances should be considered, and, if you find that the employees of the railroad company in charge of the motorcar failed to use that degree of care and caution that was reasonably demanded by the circumstances, you should find the railroad guilty of negligence."

3. "The Court charges the Jury that it was the duty of Betty Bush to exercise reasonable and proper care in the operation of her vehicle in approaching the place where the accident occurred and at the place where the accident occurred. Likewise, the defendant and its employees had a duty to exercise reasonable and proper care in the operation of the motorcar and in maintenance of the crossing where the accident occurred.
"Now, I am going to read you a chapter of the Florida statutes, which is section 768.06 [F.S.A.], as follows, and I quote:
" 'No person shall recover damages from a railroad company for injury to himself or his property, where the same is done by his consent, or is caused by his own negligence. If the plaintiff and the agents of the company are both at fault, the former may recover, but the amount of recovery shall be such a proportion of the entire damages sustained, as the defendant's negligence bears to the combined negligence of both the plaintiff and the defendant.'
"Now, this section of the statute means that although the plaintiff cannot recover where her own negligence is the sole cause of the injury, still if both she and' the defendant's employees were negligent, and the negligence of each contributed to the proximate cause of the injury, then the plaintiffs may recover, but the amount of recovery shall be such a proportion of the entire damages sustained, as the defendant's negligence bears to the combined negligence of both the plaintiff and the defendant."

\* \* \* \* \*

"1. \* \* \*

\* \* \* \* \*

"6. \* \* \*

"Now, on all of these propositions the plaintiffs have the burden of proof. But you might also consider:
"7. Was the plaintiff, Betty Bush, herself, guilty of negligence proximately contributing to her injuries?
"On this proposition the defendant railroad company has the burden of proof.

\* \* \* \* \*

"If you find for the plaintiffs and further find that the defendant has proved by a preponderance of the credible evidence that Betty Bush was, herself, guilty of negligence in some degree appreciably contributing to the cause of her injuries, then plaintiffs' recovery, if any, should be reduced to such a proportion of the entire damages they have sustained as the defendant's negligence bears to the combined negligence of the plaintiffs and defendant."

fused on the application and the Court's paraphrasing of the Florida statute in the event they should find that the plaintiff and defendant were each guilty of equal negligence.

As is so often the case, the colloquy between members of the jury and the Court was not illuminating. The jury's unfamiliarity with legal terms, the reticence to speak out, a feeling of incompetence even to phrase an intelligent question frequently lead, as was perhaps likely here, to uncertainty as to what was really troubling the jurors. One juror seemed to speak in terms of the Court's instruction as to the Railroad's negligence. During this exchange another juror chimed in, "If we find equal negligence, that is something we want to know about, too." Immediately there-after [4] the Court recharged the jury on the significance and effect of negligence by the defendant and by the plaintiffs and the application of comparative negligence.

While it is true that plaintiffs' counsel immediately after the jury withdrew registered an objection and requested that the Court submit an explanatory illustration, which an hour or so later he reduced to written form,[5] we certainly see no basis for concluding that the Court could not accept at face value the assurance from the several inquiring jurors that the Court's further charge made it clear, and that they did "understand that now."

We may assume that had the Court felt that the jury might still be laboring

---

**4.** "Juror No. 5:

"If we find equal negligence, that is something we want to know about, too.

"The Court:

"You mean, if you found both negligent? So I am going to come right, I think, to what you are talking about.

"If you find that the plaintiffs have failed to show a preponderance of the evidence that the defendant, the railroad, was negligent as alleged, or have failed to show that such negligence, if any, was a direct and proximate cause of any injury to the plaintiffs, then you should proceed no further and your verdict should be for the defendant.

"But if you find that the plaintiffs have proved by a preponderance of the credible evidence that the defendant was negligent as alleged, and that such negligence was a direct and proximate cause of injury to the plaintiffs, then your verdict should be for the plaintiffs.

"If you find for the plaintiff and further find that the defendant has proved by a preponderance of the credible evidence that Betty Bush was, herself, guilty of negligence in some degree appreciably contributing to the cause of her injuries, then plaintiffs' recovery, if any—and I am talking about both plaintiffs now—should be reduced to such a proportion of the entire damages they have sustained as the defendant's negligence bears to the combined negligence of the plaintiff and the defendant.

"Now, can I make it any clearer? Do you understand that now?

"Juror No. 1:

"Yes.

"Juror No. 5:

"Yes.

"The Court:

"Is that what is bothering you?

"Juror No. 1:

"Yes, sir.

"The Court:

"Is that all that is? You may now retire. Any objections?"

**5.** The written request stated: "In view of the question by the Jury, I wish to give you this hypothetical example illustrating the charge of the Court previously read to you. If you should find from the evidence in this case that both the plaintiff and the defendant are guilty of negligence contributing to this accident, then you must determine the amount of percentage that each bears to the combined negligence.

"Using equal negligence merely as an example and proceeding, if you feel that both parties were guilty of fifty percent of the combined negligence, or equally at fault, you should then determine the total amount of damages. After you have determined the total amount of damages to be 'X' number of dollars, then in this example you should reduce that amount by fifty percent or the percentage the plaintiff's negligence bears to the combined negligence, and award the plaintiffs one-half of 'X' number of dollars in your verdict."

under some uncertainty or confusion, the giving of explanatory illustrations would have been permissible and desirable. As to the requested one, or one of like substance, the Court might well have thought that it would be treated as a comment by him on the weight of the evidence as indicating his view that it was a 50/50 case. With that possibility he might further have concluded that to avoid that consequence a number of illustrations would have been required weighting the percentages now for the defendant, now for the plaintiff. From that might have come, whether articulated or not, the intuitive judgment that the more explanation offered, the worse would be the confusion. The Court as much as said so for after reciting the assurances given by the jurors that all was now clear, note 4, supra, the matter was terminated by the the the Court saying:

"However, if the Jury should come back in asking for further charges on the same point, then we will consider the giving of some charge of this nature."

The Judge was certainly authorized in assuming that this jury, having once sought further instructions which were patiently given, would not hesitate to return again if the matter continued in doubt.

Illustrative explanations may certainly be proper and helpful. Nothing we say is intended to forbid or discourage their use. But their use must of necessity be committed to the informed discretion of the Trial Judge. It will be a rare case indeed in which, after a technically correct charge on controlling legal principles to which no objection is taken, the failure to give a purely illustrative example will cast the Judge into error.

Neither of these points, or the general one embracing them for failure to grant a new trial, present error authorizing reversal. The jury heard the case and returned its verdict. There it ends.

Affirmed.