Harold REINDAL, Appellant
(Plaintiff below),

v.

Fred CASASSA, Jr., and Insured Transporters, Inc., a California Corporation, Appellees (Defendants below).

No. 3626.

Supreme Court of Wyoming.

Aug. 2, 1968.

Redle, Yonkee & Redle, Sheridan, William H. DeParcq, of DeParcq & Anderson, Minneapolis, Minn., for appellant.

Edward E. Murane, of Murane, Bostwick, McDaniel & Scott, Casper, for appellees.

Before HARNSBERGER, C. J., and GRAY, McINTYRE, and PARKER, JJ.

Mr. Justice McINTYRE delivered the opinion of the court.

This is a personal injury action arising out of a rear-end car-truck collision. The issues were defendants' negligence, contributory negligence of plaintiff, and damages. Upon conclusion of the evidence, the jury was directed to and did render a verdict in favor of the defendants and against the plaintiff, and the court entered its judgment accordingly. The plaintiff has appealed.

The accident happened about seven miles southwest of Casper, Wyoming, on a two-lane portion of the Rawlins-Casper highway. It was nighttime and dark; the highway was icy (described by witnesses as a solid glare of ice); the weather was cold and it was blowing and blustery with a ground blizzard across the highway. Two trucks of defendant Insured Transporters, Inc., were traveling northward toward Casper. They were stopped by a signalman on a downgrade because of stalled vehicles at the bottom of a hill.

The first northbound vehicle to be stopped was the lead truck of defendant Insured Transporters, Inc. The second truck was being driven by defendant Fred Casassa, Jr. The two truck drivers stopped in their own lane of traffic and waited for an opportunity to proceed forward. The slick and icy condition of the highway is demonstrated by the fact that a pickup between the two trucks went off the highway, and another northbound vehicle, arriving after Casassa, went into the barrow pit behind Casassa's truck.

No evidence was offered which explained exactly what trouble had taken place at the bottom of the hill in front of the two defendant-trucks, but the driver of the lead truck testified he observed a confusion of lights toward the bottom of the hill which indicated there was a problem, with lights off to the side of the road. He referred to several vehicles in the vicinity and said it looked as if someone was stalled. He also observed there was a man standing in his lane of traffic (northbound) with a flashlight directing traffic; and that the man with the flashlight signalled him to stop.

Casassa estimated he remained stopped three to five minutes. He had activated both of his rear turn signals so that they blinked simultaneously. When the vehicle went into the barrow pit behind him, he decided to set out flares for it, and just as he was reaching for flares in his truck, plaintiff's automobile struck the rear of his unit. Extensive damage was done to both vehicles and the plaintiff received serious bodily injuries. In fact, his injuries were such that he had no recollection at the time of trial of the accident, or even of having made the trip he was on.

The negligence which plaintiff claims defendants were guilty of was: (1) That Casassa parked dangerously close to the crest of a hill; (2) that Casassa did not put out flares or warnings of any kind for his stopped vehicle on the road; and (3) that Casassa violated § 31-148(a), W.S.1957, C.1967, by stopping and allowing his truck to stand on the main-traveled part of the highway.

### Distance From Crest of Hill

We do not find sufficient evidence to go to the jury on plaintiff's claim that Casassa parked dangerously close to the crest of the hill. The evidence was in conflict as to the place on the hill where Casassa stopped and where the accident occurred. Defendants argue the testimony favorable to them placed the accident some 800 feet below the crest of the hill; and that the only testimony more favorable to plaintiff was unreliable but even it placed

the accident some 350 feet below the crest of the hill.

Section 31–148(a) provides, upon any highway outside of a business or residence district, no person shall stop or leave standing any vehicle upon the paved or main-traveled part of the highway, when it is practicable to stop or leave such vehicle off such part of the highway. The section then states, but in every event an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles and "a clear view of such stopped vehicles shall be available for a distance of 200 feet."

There was no evidence of a violation by Casassa of the statutory standard for a 200-foot view, as far as the distance to his place of stopping from the crest of the hill is concerned. Counsel for appellant in effect waives any argument to the contrary by saying in his brief the distance from which the truck could have been viewed on a clear day is irrelevant. What is relevant, he says, is how far one could see in a blizzard like the one on the night of the accident.

Plaintiff failed to offer any proof that Casassa could have driven his truck further down the crest of the hill before plaintiff arrived; or that this in any event would have avoided the accident. As far as the evidence is concerned, we have no reason to believe Reindal did not see the Casassa truck when he started down the ice-covered hill. His trouble was that his automobile was out of control on glare ice (like two vehicles before).

The two previous vehicles which slid on the ice went into the barrow pit, but Reindal's car collided with the Casassa truck. According to the evidence, Reindal slid sideways for some distance before his car struck the truck. When it did strike, as damage to the car indicates, it struck broadside with the right side of the car making the impact.

These things considered, there simply was no evidence from which it could be said Casassa caused plaintiff's accident by stopping too close to the crest of the hill, when he could have done otherwise. Thus, plaintiff wholly failed to prove his first charge of negligence.

### Matter of Flares

Although counsel for appellant argues that Casassa made no attempt to provide an adequate warning to anyone who might be approaching from the rear, he has not called our attention to any statute or case authority which would make it incumbent upon Casassa to set out flares or other warning devices under the circumstances of this case.

■ Section 31–211, W.S.1957, C.1967, requires the display of certain warning devices whenever any motor truck "is disabled" upon the traveled portion of a highway or upon the shoulder thereof. But Casassa's truck was not disabled. His lane of travel was temporarily blocked, and he merely awaited an opportunity to proceed forward.

We know of no statute, rule of the road, or standard of care which, under the circumstances present, would have required more of Casassa than he did by way of warning to the next traveler behind him. It is undisputed that he activated both of his rear turn signals so that they blinked simultaneously. If there was a duty of further warning to northbound travelers, such duty may have been upon the person or persons who caused the northbound lane of traffic to be blocked. We are not called upon to decide that matter in this case, however.

■ As we have previously indicated, there was no evidence from which it may be assumed Reindal did not see the lights and blinkers on Casassa's truck, or the lights at the bottom of the hill and also from other vehicles both on and off the highway. We can presume, in the absence of evidence which would tend to prove otherwise, that Reindal did see what was

before him to be seen. McDowall v. Walters, Wyo., 360 P.2d 165, 170, reh. den. 361 P.2d 528.

■ It follows from this that we have no reason to believe flares would have added to Reindal's warning, or that they would have prevented his accident. Thus, even if we were to assume that Casassa had a duty to set out flares, we would still have to hold plaintiff failed to offer substantial evidence tending to prove the absence of flares was the cause of the accident.

### Applicability of Section 31–148(a)

■ The trial judge stated, in rendering his decision for a directed verdict, he did not consider § 31–148(a), W.S.1957, C.1967, applicable, insofar as the provision is concerned which states no person shall stop, park, or leave standing any vehicle upon the paved or main-traveled part of a highway. It is indeed obvious from any fair reading and interpretation of this statute that its purpose is to prevent traffic hazards created by persons who thoughtlessly or unnecessarily leave a vehicle where other travelers are compelled to travel around it.

We think of occasions where many travelers leave a public meeting at about the same time and travel becomes congested to the point that drivers are forced to stop and wait for vehicles ahead to start moving again. If we adopted appellant's interpretation of § 31–148(a), it would mean the traveler who had room to do so would have to pull off onto the shoulder or side of the road so that the driver behind would not run into him.

Many similar incidents could be cited. For example, if the driver ahead wishes to make a left turn and is temporarily prevented from doing so on account of oncoming traffic, would the driver behind the left-turner be compelled by this statute to get off the main-traveled part of the highway, if practicable to do so, instead of stopping until the car ahead was able to turn and get out of the way? Also, if appellant's interpretation for the words "stop" and "leave standing," were adopted we would soon have plaintiffs suing defendants for stopping at a red light, if it could be claimed it would have been practicable to stop off the main-traveled part of the highway to wait for the light to change from red to green.

■ A lane of traffic may be temporarily blocked in the course of highway maintenance work, or by an accident as in this case, and the effect on travelers becomes the same as a red light. Obviously, § 31–148(a) was not intended to require a driver of a motor vehicle to leave his lane of traffic and give way to travelers from behind when forward progress is prevented by traffic being blocked.

Another way of arriving at the same result would be to hold as a matter of law that it would not have been practicable for Casassa to have left his lane of traffic, in order to permit travelers coming after him to go by. We need to say, however, there might be circumstances in other cases where a person stopped may need to pull out of his regular lane in order to be free from negligence.

In the case before us, there was no evidence of deficient lights or blinkers, and even the plaintiff's evidence showed an unobstructed line of vision from the top of the hill, at least 350 feet or more. With automobiles sliding across the road (as apparently happened at the bottom of the hill) and with one before and one after Casassa sliding off the road and with plaintiff sliding along the road, Casassa had no way of knowing where his truck needed to be in order not to be struck.

It would be pure speculation for us even now to assume plaintiff would not have been injured if Casassa had stopped further to the right; and it would be more unreasonable for us to say Casassa should have anticipated a driver from behind

would permit his vehicle to go out of control and slide along the particular course followed by the Reindal automobile.

 The trial judge indicated, as one of his reasons for a directed verdict, that he considered Reindal guilty of contributory negligence as a matter of law. However, it is our opinion there was an absence of evidence to show negligence on the part of Casassa; and even if Casassa be considered negligent in any respect, there was an absence of evidence to show such negligence caused the accident. In view of this we conclude the directed verdict and judgment based thereon should be affirmed, and it becomes unnecessary for us to discuss the matter of contributory negligence.

Affirmed.

Mr. Justice PARKER concurs in the result.