Minnie McDOWALL and James McDowall, Wife and Husband, Appellants (Plaintiffs below),

v.

Mrs. Ralph WALTERS, Appellee (Defendant below).

No. 2964.

Supreme Court of Wyoming.

March 2, 1961.

Rehearing Denied April 26, 1961.

See 361 P.2d 528.

David D. Uchner of Henderson & Godfrey, Harry B. Henderson, Cheyenne, for appellant.

Edward T. Lazear of Loomis, Lazear & Wilson, Cheyenne, for appellee.

Before BLUME, C. J., and PARKER, HARNSBERGER and McINTYRE, JJ.

Mr. Justice McINTYRE delivered the opinion of the court.

Plaintiffs, who are husband and wife, sued for damages resulting from personal injuries suffered by James McDowall, the husband, in an accident at Pine Bluffs, Wyoming, on the night of March 7, 1958. Trial was had to a jury. Defendant moved for a directed verdict at the close of plaintiffs' case and again at the close of all the testimony. Said motion was granted, and a verdict was directed in favor of defendant. From such directed verdict plaintiffs have appealed.

The parties on both sides, as indicated in their pleadings and the manner in which questions were asked of witnesses at the trial, have assumed that plaintiff James McDowall, a man about 75 years of age, was for some reason in a prone position at a driveway entrance leading into vacant lots owned by the defendant and her husband in connection with their home and place of business. To what extent this assumption arose from the fact that defendant and the lady with her did not see said plaintiff we cannot say. He himself has no recollection as to how the accident happened.

The defendant and a guest, Mrs. Avis McNamee, in defendant's automobile and with defendant driving, drove to defendant's home at about 8:30 p. m. The streets were slick from snow and ice. There had been a light snow one or two days previously. They were proceeding east on Third Street. At the driveway entrance to the Walters' lots, which is in the middle of the block and immediately to the east of the alley entrance, defendant made a left turn from Third Street entering said lots. As she did so she struck McDowall, at a place where the sidewalk would normally be, and dragged or pushed him a distance of 32 feet. At about this point the automobile wheels spun, and her forward progress ceased. There was an incline up the street and on into the lots. At first she backed a few feet and tried a second time, still without success. She then backed into the street again and drove up farther to

the right stopping the car where she intended to park it at the Walters' home and place of business.

In the meantime Russell Jaramillo, 17 years of age, who had been crossing the alley in the middle of the block on a route which would have led across the Walters' lots, had watched defendant's maneuver and observed that she was in contact with some dark object. After she had passed on, he started to continue on his way when he noticed a leg move. Walking over to the object, he saw it was a man. He then ran over to defendant's car and told Mrs. Walters and Mrs. McNamee that there was a man back there, and he thought they had run over him. At the trial his direct testimony as a witness for defendant more or less indicated he had not observed the dark object until about the time Mrs. Walters was having her difficulty in proceeding forward. On cross-examination, however, he claimed that he had seen the object about at the time and place where it was first struck, but he did not then realize it was a man. His explanation was that it could have been a chunk of ice or snow from a truck.

Defendant testified that her car, a 1951 Chrysler Imperial, was in good condition and had good lights. She did not see McDowall and did not know she had struck or dragged him until told by Jaramillo. Her testimony was consistent on the point that she had not seen Mr. McDowall. On the point as to whether she had looked, it tended generally to indicate that she knew she had looked because it was her habit so to do and the thing which a person would just naturally do. On cross-examination she would not and did not admit that she had not looked, and several times when pressed on the matter would assert that she did look. On the whole, however, the jury would have been justified in attaching significance to the following portions of her testimony:

"Q. Did you give any signal you were going to make a left turn at all?

A. I probably put my turn light on which I always do.

"Q. Do you remember doing it that night? A. How would I? I always do.

"Q. Your policy because you always do you must have done it that night? A. Yes.

"Q. But you have no distinct recollection of the actual operation at the time of the accident, you don't remember that definitely? A. No.

\*   \*   \*   \*   \*   \*

"Q. How far did you look to your left? A. As far as I could see I suppose.

\*   \*   \*   \*   \*   \*

"Q. As you made this swing to your left how far to the left did you look with reference to the east boundary of the alley where it intersects Third street, did you look over there? A. I would think so.

"Q. Did you do that? A. I suspect I did.

"Q. You are not sure? A. Yes, I am pretty sure. When I drive I usually look.

"Q. Because you usually do you figure you must have that evening, is that right? A. Yes, sir.

\*   \*   \*   \*   \*   \*

"Q. What part of Third street were you on? A. I presume approximately where a person usually drives to the right and the chances are—

\*   \*   \*   \*   \*   \*

"Q. What about the left hand side curb? A. Everything clear or probably wouldn't have made a turn.

\*   \*   \*   \*   \*   \*

"Q. What part of the street did you see as you looked at that time? A. As a person looks you look before you get to the place you are going to turn and you have a view ahead of you of whole street and you have a certain amount of view of the driveway where you are to turn.

"Q. Including the place where the gutter is? A. Yes. I presume I would look there because there is an apron there to driveway.

\*   \*   \*   \*   \*   \*

"Q. Yesterday you were on this stand and we discussed this turn and as I recall your testimony I asked if you looked as you have indicated today in all directions and you said you must have looked because you always did look, is that still your testimony? A. Absolutely.

"Q. That is your only way of remembering just what you did on the night of March 7th? A. I believe that is sufficient. It seems to me if you are wondering why I didn't see him I might explain this way, have you ever had anybody try to point out an antelope in the field, perhaps, you couldn't spot it at all until it started to move? and my contention is he must have blended into the background, still he was there all the time even if we looked, we couldn't see him.

\*   \*   \*   \*   \*   \*

"Q. You say in your answer here, you could not have seen him even if she had been looking at that particular spot because the lights of her car as she came around the curve, were pointing slightly upward. Do you say you couldn't have seen him if you had looked right where he was because the lights were pointing up? A. Evidently I couldn't because I probably did look. The fact that I still explain it by the protective color, until the animals, you don't see them unless they move. Can't somebody else by blending into the background and you don't see them until they move?

\*   \*   \*   \*   \*   \*

"Q. At a point on the curb line eight feet east of the alley what dark spots did you see? A. Probably piles of some of the snow and ice had fallen off of trucks and cars.

"Q. Did you see any right at that spot? A. I probably thought there was because I thought I hit snow.

"Q. You don't have any independent recollection seeing any spots there right now? A. Just general picture, yes.

"Q. Do you have any definite recollection of any spots right at the point of the impact with the body of Mr. McDowall before he was struck? A. Probably there was but that is one of the impossible—this far afterwards all I have in mind is general picture of the whole thing."

The only explanation offered by Mrs. Walters as to why she did not see McDowall before striking him was that his color must have blended into the background, and also she claimed that trucks came and went over this driveway and there probably were piles of snow and ice which had fallen off the trucks. She did not seem to remember any such piles in particular.

Counsel for defendant contends that Mr. McDowall had become intoxicated and had passed out and that he was therefore guilty of contributory negligence. Nothing in the evidence supports that theory except that McDowall says he had two small glasses of wine in the morning, one in the afternoon while playing cards and one in the evening. On the other hand, several witnesses tell of his having had a severe epileptic seizure in 1955 which resulted in a coma and unconsciousness for several hours. He had been taking a medicine continuously from that time on in an effort to prevent further seizures. At the time of the accident he was struck at a place just across the alley and slightly over 28 feet from his home on what the defendant called an apron for the Walters' driveway. It was the area intended for and used as a sidewalk, and was an incline. Whether, before this accident, he slipped on the ice, or had an epileptic seizure or suffered some other disability, such as that suggested by defendant, we shall probably

never know. His wife explained that he could have been going in that direction to the pool hall or to neighbors across the street.

■ As we view the situation in this case, a directed verdict for plaintiffs is tantamount to holding that, under the uncontradicted evidence here involved, defendant is excused *as a matter of law* for not seeing the plaintiff James McDowall in time to avoid the accident, regardless of whether said plaintiff may or may not have been guilty of contributory negligence. We say that for this reason: If McDowall were not guilty of contributory negligence, the question would be whether defendant by the exercise of ordinary care should have seen him and avoided the accident; or otherwise stated, was she negligent? On the other hand, if McDowall were guilty of contributory negligence, then the question would be whether the accident might have been avoided by the exercise of ordinary care on the part of defendant after the danger of the situation was, or should have been, by her discovered. See Borzea v. Anselmi, 71 Wyo. 348, 258 P.2d 796; Williams v. Missouri Pac. R. Co., La.App., 11 So.2d 658, Id., La.App., 6 So.2d 79; A.L.I. Restatement of the Law of Torts, Negligence § 479, p. 1253 (1934).

In Borzea v. Anselmi, supra, 258 P.2d 796, 800, it was stated that courts will not hold that the question of negligence or contributory negligence is one of law except in the clearest case. Also, in McClure v. Latta, Wyo., 348 P.2d 1057, 1062, where a plaintiff had the burden of proving gross negligence on account of the guest statute, this court refused to overrule the findings of a jury because it was of the opinion that there is little conflict among the authorities in the view that, where the evidence is legally sufficient and conflicting or different inferences of fact may reasonably be drawn therefrom, it is for the finder of fact to determine the issue of negligence. The court then proceeded to say:

" * * * The question has been definitely resolved in Wyoming by the

case of Meyer v. Culley, 69 Wyo. 285, 241 P.2d 87, 96, wherein we said that ordinarily the question of negligence, whether slight or gross, is one of fact; and that if the evidence respecting it is in conflict and is such that ordinary minds might draw different conclusions therefrom, then a question of fact is presented for the jury to determine."

The inevitable and conclusive fact in this case is that defendant struck and dragged James McDowall without having seen him. The jury would be warranted in drawing an inference from the portions of her testimony quoted above that she is not sure whether she looked but merely claims that she ordinarily does look. From the testimony of Jaramillo an inference would have been warranted to the effect that he saw an object not then recognized as a person at the point where McDowall was struck, although he stood a considerable distance up the alley, and the automobile headlights may have been more of a disadvantage than advantage to him. There was also testimony from the deputy sheriff and several other witnesses to the effect that new and powerful street lights on Third Street at either end of this block were good and "adequate", and that pedestrians would be seen in the middle of the block from the street lights alone. Among other things there is an 8 x 10-inch photograph of the area in evidence. It shows the entire area to be clear, open and free from depressions. It also appears to be free from trees or objects which could cause shadows. It is also free from weeds or vegetation which could produce a camouflaging effect as suggested by defendant.

We do not pretend to say what findings of fact a jury would have made from this evidence, but we do say that different inferences of fact could reasonably be drawn therefrom when coupled with an inconclusive answer as to why plaintiff was in plain view and not seen. The proposition seems to be, as stated in 9 Wigmore on Evidence, 3rd Ed., § 2494, p. 299, whether there are "facts in evidence which if unanswered

would justify men of ordinary reason and fairness in affirming the question which the plaintiff is bound to maintain."

In this instance not only is there evidence that defendant failed to see the helpless Mc-Dowall but there is considerable legal and competent evidence tending to show that he was in a place where he might have been seen if ordinary care in looking had been exercised. The photograph alone might very well convey such an impression to the jurors, and we can add to it street lights, good automobile lights, descriptions of the area by several witnesses, the statement that Jaramillo saw something where he was struck, and numerous statements of the defendant herself indicating that she could not be sure she looked except that she "presumed" she did, or she "probably" did, or "would think" she did or "suspect" she did. This evidence, if unanswered, certainly would justify men of ordinary reason and fairness in affirming plaintiffs' point of view. Only the trier of the facts can say whether such evidence is or is not sufficiently answered.

In 1 Blashfield, Cyclopedia of Automobile Law and Practice, Part 2, Perm.Ed., 1960 Cum. Pocket Part, § 681, p. 209, the duty of a motorist to maintain a reasonable and proper lookout is described in this manner:

"It has been stated that failure to look at all constitutes negligence as a matter of law while the question as to whether one who looks sees all that he should see is one of fact for the jury."

■ Without contending that defendant failed to look at all and without suggesting that the first part of this rule should be applied, it is sufficient for our purpose to follow the second part of said rule and to say that the question as to whether defendant saw all that she should have seen is one of fact for the jury. This same reasoning was followed in Gamet v. Beazley, 62 Wyo. 1, 159 P.2d 916, 920. In that case two rules from the same author, Blashfield, were quoted (1) to the effect that a driver is negligent if he proceeds at such a speed in the dark that he cannot bring his automobile to a standstill within a distance that he can plainly see objects or obstructions ahead of him by his own light, and (2) to the effect that the standard of care to be exercised is one for the trier of the facts. In its opinion this court said: "It is not, we think, necessary to determine whether we should adopt the rule first mentioned. The second of these rules will meet the purposes of this case."

In Nebraska the supreme court of that state has followed the general rule that it is negligence as a matter of law for a motorist to drive an automobile so fast on a highway at night that he cannot stop in time to avoid a collision with an object within the area lighted by his lamps. See Buresh v. George, 149 Neb. 340, 31 N.W.2d 106, 108, and also Murray v. Pearson Appliance Store, 155 Neb. 860, 54 N.W.2d 250, 255, wherein it is said that the motorist "is bound to take notice of the road, to observe conditions along the way, and to know what is in front of him for a reasonable distance." Again, in Haight v. Nelson, 157 Neb. 341, 59 N.W.2d 576, 579, 580, 42 A.L.R.2d 1, that court reaffirmed such a general rule citing Buresh v. George, supra. Although the Nebraska court pointed out in both the Buresh case and Haight case that it had made exceptions to the general rule when the nature of the object or its condition, such as color, dirt, et cetera, affected its immediate visibility, it nevertheless stated in the former case and reaffirmed in the latter as follows:

"* * * In such cases we have held that the issue of the driver's negligence, if any, and the degree thereof is for the jury."

A motorist cannot say that he looked, but failed to see what was clearly visible, or could have been seen by the exercise of ordinary care. 1 Blashfield, Cyclopedia of Automobile Law and Practice, Part 2, Perm.Ed., 1960 Cum.Pocket Part, § 682, p. 213. Such a rule was previously affirmed by this court in Chandler v. Dugan, 70 Wyo. 439, 251 P.2d 580, 587, wherein it was said:

"* * * The defendant, under the law, is not permitted to say that he did

not see when he could have seen by looking. As this Court has said: 'A person is presumed to see that which he could see by looking. * * * He will not be permitted to say that he did not see what he must have seen, had he looked'. Chapman v. Ewing, 46 Wyo. 130–136, 24 P.2d 687, 688, 25 P.2d 1019; Autio v. Miller, 92 Mont. 150, 11 P.2d 1039; Galicich v. Oregon Short Line R. Co., 54 Wyo. 123, 87 P.2d 27; Huddy Automobile Law Vol. 3–4, Sec. 49, p. 91. See also the case of Hawkins v. Loffland Bros., 70 Wyo. 366, 250 P.2d 498."

The testimony in this case, considered in the light in which we have viewed it, which is and should be in the light most favorable to plaintiffs, was sufficient we think to make a case for the jury, and the directed verdict should not have been given. Said case will therefore be reversed and remanded for a new trial.

Reversed and remanded.