**SINCLAIR REFINING COMPANY, a Corporation, Appellant (Defendant below),**

v.

**Louise B. REDDING, Appellee (Plaintiff below).**

**No. 3638.**

Supreme Court of Wyoming.

April 4, 1968.

David A. Scott, of Murane, Bostwick, McDaniel & Scott, Casper, for appellant.

Arnold B. Tschirgi, Elizabeth A. Kail, Tschirgi & Kail, Lander, for appellee.

Before HARNSBERGER, C. J., and GRAY, McINTYRE, and PARKER, JJ.

Mr. Justice PARKER delivered the opinion of the court.

Plaintiff sought to recover from defendant $65,706 as compensation for injuries allegedly resulting from an accident which occurred at dusk on the evening of July 4, 1965, at a Sinclair filling station in Cody.[1] She had gone to the ladies' restroom in the building, and on the way back to the car in which she was a passenger, fell, injuring herself. According to the pretrial, plaintiff sought to recover damages from Sinclair in that the premises were unsafe because of improper lighting and because a cap on a pipe which was used to carry

---

1. At the instance of Sinclair, C. C. Childress, lessee of the filling station, was made a third-party defendant, but the court granted a separate trial as to his liability.

gasoline from tank wagons to the underground tanks was permitted to protrude and extend above the level of the adjoining concrete in an area used for foot travel by customers of the station in going to and from the station and the station restrooms; that because of the negligent manner in which the company allowed said cap to protrude above the surrounding surface, the plaintiff was caused to trip and fall, the injuries complained of resulting therefrom. Defendant generally denied all liability and alleged affirmatively that the accident was caused by the plaintiff's failure to use due care in looking where she was walking; that therefore the accident was caused either by plaintiff's sole negligence or her contributory negligence.

The cause was tried with a jury. At the close of defendant's evidence its counsel moved for a directed verdict pursuant to Rule 50, W.R.C.P., on the grounds that (1) plaintiff failed to sustain her burden of proof relative to the issue of negligence, (2) the evidence proved plaintiff was a licensee at the time she went on its property and plaintiff had failed to prove a breach of any duty owed to a licensee by a property owner which would be prerequisite to a finding of a fault in the case, and (3) the evidence showed plaintiff as a matter of law was contributorily negligent. The motion was overruled; the case proceeded; the jury returned a verdict in favor of the plaintiff, assessing her damages in the sum of $10,469.23; and judgment was entered accordingly. Defendant has appealed arguing that:

1. The plaintiff failed to prove that the installation of the fill pipes in question was done in a negligent manner by the appellant, and that the alleged negligence was the proximate cause of her injuries.

2. Plaintiff was contributorily negligent.

3. Plaintiff was a licensee at the time the accident occurred and failed to prove any breach of the duty owed to her, as a licensee, by the defendant.

At the time of the accident, Louise B. Redding was a 69-year-old widow, weighing in excess of 170 pounds. Her daughter, Alma Nicol, with whom she lived near Lander, was driving her to Billings, Montana, where she was to take a train to Minnesota. They had left Lander around 4 p. m. and were accompanied by plaintiff's grandson and granddaughter. Mrs. Nicol had stopped at Thermopolis and purchased gas at a Sinclair station. When they arrived in Cody at approximately 8:30 p. m. both her mother and son wanted to go to the restroom. Mrs. Nicol parked the car west of the Sinclair station and went to a drugstore to pick up some items her mother needed. Plaintiff's grandson helped her to the restroom at the west side to the rear of the station, the door of which was not locked. According to plaintiff when she came out of the restroom she saw a barrel at the west corner to the front of the station, and since the step down appeared quite deep to her and she did not want to fall, she took hold of it and stepped down, turned around, started walking, caught her toe on the fill pipe, which she did not see because of a shadow from the barrel, and fell, causing the injuries.

Defendant's exhibit showed that at the front of the station (which faced south) there were three spotlights at the top of two poles, each of which was mounted between two sets of gas pumps. According to the station manager's testimony, the lights consisted of one 300 watt bulb and three 150 watt spots on each of the poles and one spotlight was set to illuminate the west side of the building where the fill pipes were located. Other witnesses who were present at the time plaintiff fell did not actually see her trip over the pipecap, but said that after the accident they were able to see the pipes as they were illuminated by the artificial lights on the filling station poles. Plaintiff's grandson also said that he had seen the pipecaps when he had gone to the restroom.

Defendant first argues that plaintiff did not sustain her burden of proving negligence on the part of the defendant which was the proximate cause of the in-

juries inasmuch as the evidence introduced by the plaintiff merely proved she had an accident which she testified was caused by her falling over a pipecap located in an adequately lighted area, the pipecap being visible to the public. Plaintiff on the other hand maintains there was insufficient light at the point where she tripped over the pipecap because of the shadow cast by the trash barrel and notes the defendant's failure to present evidence on this. Accordingly, she invokes the established rule that the evidence of the successful party must be given every favorable inference which may be reasonably and fairly drawn from it. Kinsley v. McGary, Wyo., 390 P.2d 242, 243. We consider her point well taken and under the circumstances present in this case find the verdict and judgment not vulnerable on this ground.

■ Defendant in its second argument that plaintiff was contributorily negligent, which fact would bar her from recovery, contends that plaintiff's grandson testified he guided his grandmother around the pipes when he helped her from the car to the restroom and that plaintiff had indicated there was then sufficient light for her to see the area in question. However, our review of the evidence fails to bear out these assertions and indicates instead that plaintiff testified she had no trouble seeing her way across the area from the automobile to the restroom, which was to the north of the area she traversed in attempting to return to the car, and that the grandson did not say he guided her around the pipes but merely that he had seen them. We, therefore, find this portion of defendant's argument to be without force. We likewise place no weight upon the unsupported statement that the danger was as obvious to plaintiff as to defendant.

Defendant for its third point, without direct criticism of the trial court for overruling the motion for directed verdict, urges that plaintiff was merely a licensee and that in such status could recover from defendant only if there had been proof of wanton and willful harm, which was entirely lacking.

Neither party objected to the instruction given the jury on the licensee-invitee aspect of the case:

"You are instructed that whether a person entering the premises of another bears the legal status of an invitee or of a mere licensee depends upon the purpose of the visit. So long as its object is the pleasure of only the visitor, or of some third party, or of a purely social nature, then she is, at most, only a licensee. When, however, the visitor has a purpose that is related to the occupant's business or that involves some matter of mutual interests [sic] or advantage, then an invitation to use the premises may be inferred, and whether so inferred or expressed, the invitation and the purpose make the guest an invitee."

The question raised by this feature of the case is not one admitting of routine, positive solution, first, because each case in which the problem occurs presents facts more or less unique in some respect, and second, because the law has not been settled regarding the criteria of an invitee. Defendant's counsel in addressing the trial court stated that a split of authority exists on the subject and referred then as he does now to Annotations, 93 A.L.R.2d 784 and 95 A.L.R.2d 992, which subsequently in certain respects have been supplemented by Annotation, 8 A.L.R.3d 6. This latter analysis makes a cogent statement at page 35: "The question of status in given circumstances is generally one of fact, determined by the trier of fact; however, it may be one of law where the circumstances are such that reasonable men would not differ in their conclusions."

As is observed in 2 Harper and James, Law of Torts, p. 1478 (1956), the actual course of decisions has been towards broadening the class of invitees, the current two tests in vogue in deciding what constitutes an invitee being (1) the "economic benefit" test, and (2) the "invitation" test.

"The economic benefit theory proceeds on the assumption that affirmative obligations are imposed on people only in return for some consideration or benefit. Any obligation to discover latent dangerous conditions of the premises is regarded as an affirmative one, and the consideration for imposing it·is sought in the economic advantage—actual or potential—of the plaintiff's visit to the occupier's own interest. 'It is not the fact of invitation, nor of the knowledge of the probability of the customer's presence which this implies which raises the duty, but the purpose of the visit and the occupier's interest therein.' * * * it may be said that most, if not all, courts are willing to regard a visitor as an invitee on the basis of the economic benefit conferred upon the occupier by the visit. * * * The controversy lies in the claim to exclusive validity made for the economic benefit test by some of its proponents.

"The invitation test does not deny that 'invitation' may be based on economic benefit, but it does not regard that as essential. Rather it bases 'invitation' on the fact that the occupier by his arrangement of the premises or other conduct has led the entrant to believe 'that [the premises] were intended to be used by visitors' for the purpose which this entrant was pursuing, 'and that such use * * * was in accordance with the intention and design with which the * * place was adapted and prepared * * *.' Such arrangement or other conduct encourages people to enter the land with a sense of assurance that it has been prepared for their safety. * * *" 2 Harper and James, Law of Torts, pp. 1478–1479 (1956).

██ Defendant argues that under either test the plaintiff must be classified as a licensee in view of the testimony which she presented during the trial, ·directing particular attention to the plaintiff's testimony that they stopped at the station so that she and her grandson could use the restroom facilities and the corroboration of

this by plaintiff's daughter and grandson. However, we are unprepared to say that there was not sufficient evidence upon which to base a holding that the plaintiff was an invitee. Under the "economic benefit" test there may be either an actual or potential economic advantage. Although defendant insists that since plaintiff did not own the automobile and could not reasonably be considered to be a prospective customer of the defendant's filling stations, this was, under the circumstances here present, a matter about which reasonable minds might well differ. Plaintiff was being driven to Billings on the day of the accident in her daughter's automobile. They had previously· patronized a Sinclair station when a gasoline purchase was made and obviously on the return trip the automobile would require additional fuel. As is ·indicated in an examination of the subject in 2 Harper and James, Law of Torts, p. 1483, n. 30 (1956), classifying of entrants and not restricting the invitee category to persons actually buying may encourage plaintiffs to be less than ingenuous in their testimony on·the reasons for entering a particular building or property, but this cannot affect our holding that there was substantial evidence presented to the jury in the instant case which warranted it in finding the plaintiff to be an invitee. We are inclined to give some credence to plaintiff's argument that as a matter of common knowledge the Sinclair Refining Company is continuously and actively soliciting the patronage of the motoring public, advertising, and as an incident thereof calling attention to the availability of clean restrooms.

In Dym v. Merit Oil Corporation, 130 Conn. 585, 36 A.2d 276, 278, where a motorist stopped on the premises of a filling station, although it was already closed, to enable his passenger to use the restroom, which was left unlocked, the court said:

"The defendant did not maintain its toilets as a matter of public convenience. They were incident to its business. They were there as an added inducement to

patronage. * * * No sign was conspicuously displayed at the entrance to the premises indicating that the station was closed and that motorists were not to enter. The fact that the toilets were left unlocked at night might be found to indicate a purpose that they could be used at any time by persons who patronized the station.

"While we do not go so far as to say that a stranger coming upon the premises after the station was closed would be considered an invitee in such circumstances, we do hold that the jury might reasonably have found that this plaintiff was an invitee under the circumstances they could have found existed. They reasonably could have concluded that the defendant acquiesced in the use of the toilet by the plaintiff at the time by reason of a mutual benefit to itself and the driver and a guest in his car. * * * Offering such facilities tends to build up a good will between the proprietor and the customer. It is difficult otherwise to explain the defendant's custom of leaving the toilet doors unlocked after closing hours. The determination of the status of the plaintiff, involving, as it did, findings and inferences which it was for the jury to make, was properly submitted to them as a question of fact. * * *"

In Wingrove v. Home Land Co., 120 W.Va. 100, 196 S.E. 563, 566, 116 A.L.R. 1197, the court reviewed a situation wherein a driver, who made a small purchase at a filling station, was accompanied by a guest who was injured while seeking to use the toilet facilities. Its opinion is both interesting and significant:

"* * * We think the operator of a filling station equipped with toilets for public, as distinguished from private, use, impliedly, if not expressly, invites the traveling public to make use thereof, and that there is no distinction between its obligation and responsibility to the man who owns or drives a car into the station and his guest. We think this conclusion is supported by legal logic and plain common sense. * * * this rule should be limited in its application to owners or operators of motor vehicles and their families or guests. * * *"

Of course, in the situation before us the driver of the automobile had made her purchase at a station of defendant other than the one where the injury occurred, a circumstance not present in any opinion which has come to our attention, and for this reason the instant case may be said to be extreme. Nevertheless, we deem the question of invitee status here to be one for the trier of fact since under the evidence disclosed reasonable men could differ in their conclusions.

Affirmed.