**UNION PACIFIC RAILROAD COMPA-
NY, a Utah corporation, Appellant,**

v.

**Jimmie Rex LUMBERT, Appellee.**

No. 9735.

United States Court of Appeals
Tenth Circuit.

Sept. 26, 1968.

Rehearing Denied Nov. 12, 1968.

Edward T. Lazear, of Loomis, Lazear, Wilson & Pickett, Cheyenne, Wyo., for appellant.

Maxwell E. Osborn and John W. Pattno, of Pattno, Osborn, Lynch & Smith, Cheyenne, Wyo., for appellee.

Before MURRAH, Chief Judge, and WILBUR K. MILLER * and BREITEN-STEIN, Circuit Judges.

BREITENSTEIN, Circuit Judge.

This case arises out of a railroad-crossing accident near Pine Bluffs, Wyoming. A jury awarded appellee-plaintiff damages in the amount of $102,573 and the railroad appeals.

A road and two railroad tracks intersected at an angle of 60 degrees. The only warning sign or device was the familiar crossbuck. A signal box, telegraph poles, and some bushes partially obstructed the view. The surface of the road was rough and contained chuckholes. The railroad was aware of the crossing conditions.

The plaintiff traveled the road regularly going to work. He testified that he stopped, looked in both directions, heard no whistle or other warning, began to cross the tracks, and remembers nothing further until he was in the hospital. Three other witnesses testified that they heard no whistle. The railroad knew of several other personal injury accidents which had occurred at the crossing in the previous five years.

The engineer of the train and a brakeman sitting in the fireman's seat testified that the train's whistle was blowing and the bell ringing; that the headlights of the engine were on; that they saw the plaintiff's car an unstated distance from the crossing;[1] that the plaintiff was looking forward and "fooling" with something on the dash of the car; that the train was traveling 55–60 miles an hour; and that an emergency stop of the train at that speed would have required one and a quarter miles. The train and the car arrived at the crossing at the same instant.

We believe that the evidence is sufficient to establish negligence of the railroad. The crossing was dangerous and known by the railroad to be dangerous. The questions of whether the railroad should have provided special warning devices at the crossing, of whether warning was given by the blowing of the whistle, and of whether the speed of the train was excessive are for determination by the jury.[2] Certainly we cannot say that the evidence completely negatives negligence of the railroad and is susceptible of no reasonable inference to sustain the position of the plaintiff.[3]

The railroad says that the plaintiff was contributorily negligent as a matter of law because he cannot say that he looked and failed to see what was clearly visible, or could have been seen by the exercise of ordinary care.[4]

The accident occurred in Wyoming and we must apply Wyoming law. The Supreme Court of that state has often said that contributory negligence can be resolved as a matter of law only in the clearest case.[5] The question of negligence is "determinable by the trier of fact if there is any evidence which would show or tend to show the relative care or negligence which was exercised, or if intelligent minds may draw different conclusions as to the matters at issue."[6]

In Chicago, R. I. & P. R. R. Co. v. McFarlin, 10 Cir., 336 F.2d 1, cert.

---

* Of the District of Columbia Circuit, sitting by designation.

1. The testimony was that the whistle began blowing before the train reached the "whistling board" and that the car was seen when the train was about halfway between the "whistling board" and the crossing. The "whistling board" is 1300–1400 feet from the crossing.

2. Cf. Chicago & N. W. Ry. v. Golay, 10 Cir., 155 F.2d 842, a case concerning a Wyoming grade-crossing accident.

3. Cf. Christopherson v. Humphrey, 10 Cir., 366 F.2d 323, 326.

4. See McDowall v. Walters, Wyo., 360 P.2d 165, 169, rehearing denied, Wyo., 361 P.2d 528.

5. Ford Motor Co. v. Arguello, Wyo., 382 P.2d 886, 892, and cases there cited.

6. Meredith GMC, Inc. v. Garner, 78 Wyo. 396, 328 P.2d 371, 373.

denied 379 U.S. 1001, 85 S.Ct. 721, 13 L.Ed.2d 702, we held that a motorist killed in a grade-crossing accident was contributorily negligent as a matter of law because under an unbroken line of New Mexico decisions a motorist approaching an open unguarded railroad crossing must "stop, look and listen for trains using the tracks, and the act of looking and listening must be performed in such manner as to make it reasonably effective."[7] We are cited to no comparable Wyoming decisions. In Chicago & N. W. Ry. v. Golay, 10 Cir., 155 F.2d 842, 847, a Wyoming grade-crossing accident case, we held that the question of contributory negligence was for the jury when the evidence showed that the train whistle was not sounded and the driver's vision was partially obstructed. In the instant case there is evidence that the driver's view was partly blocked, that his attention could have been diverted by the roughness of the crossing, that the angle at which the track and road met made observation difficult, and that the train did not sound any warning. In our opinion the evidence disclosed a situation in which reasonable men might differ in their conclusions as to the proximate cause of the accident. Under the facts presented, Wyoming law requires the determination of the contributory negligence issue by the trier of the fact.[8]

Without objection the jury was instructed on the doctrine of last clear chance. The jury returned a general verdict. The railroad argues that the evidence is insufficient to sustain recovery on the theory of last clear chance.

Our attention is called to no Wyoming grade-crossing case considering the issue of last clear chance. In an automobile collision case, Wyoming has said that "the doctrine of last clear chance entails a clear and apparent opportunity to avoid the result."[9] There is some doubt whether the record contains evidence to show that the engineer of the train had a "clear and apparent opportunity" to avoid the accident. In the circumstances we need not resolve the question.

The problem is whether on the record presented the railroad is in a position to seek a reversal on the ground of insufficiency of the evidence to sustain recovery under the doctrine of last clear chance. At the close of the plaintiff's case and at the close of all the evidence the railroad moved for a directed verdict on the sole ground that "there is no substantial evidence to support a judgment for the plaintiff." The motions were denied. The court twice instructed the jury on last clear chance and the railroad objected neither time.[10] The jury returned a general verdict for the plaintiff.

In the absence of a pertinent objection to the charge or a request for a specific interrogatory a "general verdict is upheld where there is substantial evidence supporting any ground of recovery in favor of an appellee."[11] In the case at bar the evidence on the negligence issue is sufficient to sustain a verdict for the plaintiff. The argument of the railroad is that the jury might have been misled into deciding the case for the plaintiff on the ground of last clear chance. The only way it could have been misled is by an erroneous instruction. The railroad did not object to the last clear chance instruction although it had

7.  Id. at 2.

8.  Sinclair Refining Co. v. Redding, Wyo., 439 P.2d 20, 24.

9.  Dr. Pepper Co. v. Heiman, Wyo., 374 P.2d 206, 212. In Johnston v. Vukelic, 67 Wyo. 1, 213 P.2d 925, 931, Wyoming adopted the statement of the last clear chance rule found in Restatement, Torts, § 480, pp. 1257–1258.

10. The second instruction on last clear chance was given in response to a question submitted by the jury during its deliberations.

11. Vareltzis v. Luckenbach Steamship Co., 2 Cir., 258 F.2d 78, 80. See also Cross v. Ryan, 7 Cir., 124 F.2d 883, 887, cert. denied 316 U.S. 682, 62 S.Ct. 1269, 86 L.Ed. 1755; State Fuel Co. v. Gulf Oil Corp., 1 Cir., 179 F.2d 390, 396–397; and Moore v. Stephens, 6 Cir., 271 F.2d 119. Wyoming has followed the principle stated. Colwell v. Anderson, Wyo., 438 P.2d 448, 452.

two opportunities to do so. In such a situation Rule 51, F.R.Civ.P., precludes consideration of the instruction.[12] To hold otherwise would be to permit a party to deliberately acquiesce in the tendering of a theory he knew to be erroneous so as to guarantee himself a second trial if the first resulted in an unfavorable jury verdict. On this appeal the railroad cannot take advantage of an objection which it never presented to the trial court.

Affirmed.

WILBUR K. MILLER, Senior Circuit Judge (dissenting):

In my view, the trial judge erred in refusing to direct a verdict for the railroad company and in refusing to grant its motion for judgment *non obstante veredicto;* hence I cannot concur in the foregoing opinion. While I have great sympathy for this unfortunate appellee, my reading of the record convinces me that he failed to show any negligence on the part of the railroad company which caused or contributed to his injury, and that he was contributorily negligent as a matter of law. My reasons for disagreeing with the majority opinion, both as to factual and legal issues, will become apparent during the course of this dissent.

In his second amended complaint, Lumbert charged the railroad company with negligence in the following language:

"4. The said collision aforesaid was proximately caused by the negligence of Defendant in that:

"a. The crossing referred to had inadequate warning signals.

"b. Defendant negligently failed to maintain said railroad crossing in a safe condition.

"c. Bushes and telephone poles obscured vision of Plaintiff where he was stopped on the west side of tracks at the crossing, and Defendant failed to give warning by sound or light of the approach of the railroad train.

"d. Defendant has had prior knowledge that said crossing was dangerous due to prior accidents.

"e. Defendant observed plaintiff in a position of peril and had the last clear chance to avoid said accident and negligently failed to do so in that defendant failed to slow said train and failed to give warning with a whistle."

The order on the pre-trial conference recites that "Mr. Osborn [attorney for Lumbert] * * * states that the accident occurred at a dangerous railroad crossing, that the defendant should have given more adequate warning signals, and that the defendant had the last clear chance to avoid the accident." According to the order, the attorney for the railroad company denied any negligence, pleaded contributory negligence, stated the warnings were adequate, and that "the last clear chance doctrine is not applicable."

The accident happened about 7:30 in the morning of November 2, 1966,—a cold, clear day—at a country crossing near Pine Bluffs, Wyoming, which the appellee had crossed at least twice on each working day for more than three months. He was thoroughly familiar with it. On this morning, he stopped a few feet short of the crossing in order to see whether repairs to his car he had made the night before were effective. After stopping "momentarily," or about two seconds, he said he looked both ways, saw and heard no train, and proceeded toward the crossing. He woke up in a hospital.

Lumbert said his view to his right was partially obscured by bushes and telephone poles, but admitted on cross-examination that when he stopped his car he had already passed the bushes. Moreover, a photograph of the scene, on which he marked the point of his stop, showed beyond peradventure that the telephone poles were not between him

12. Dunn v. St. Louis-San Francisco Ry., 10 Cir., 370 F.2d 681, 683.

and the train and that there was no obstruction to prevent him from seeing a train approaching on his right. Thus, the picture completely refutes Lumbert's theory; had he looked, he would have seen the train.

It will be remembered that, in his assignment of errors, the appellee stated the railroad company "had prior knowledge that said crossing was dangerous due to prior accidents," and that in the pre-trial order he is quoted as having said "the accident occurred at a dangerous railroad crossing." In the same vein, the majority opinion says, "The railroad knew of several other personal injury accidents which had occurred at the crossing in the previous five years," and that "The crossing was dangerous and was known by the railroad to be dangerous."

Any railroad crossing is dangerous, and particularly so when a motorist drives across it without looking to see whether a train is approaching, as Lumbert did. I suppose that, in saying the crossing was dangerous and, because of previous accidents, was known by the railroad to be dangerous, the majority mean that because of its physical characteristics the crossing was more dangerous than an ordinary country crossing; and that previous accidents had demonstrated that alleged fact to the railroad company.

The evidence showed, however, that there was no unusual physical feature which differentiated the crossing from an ordinary country crossing, and that previous accidents there had been due, not to any inherently dangerous condition at the crossing, but to the negligence of the motorists involved in the accidents. The testimony was that there had been four previous accidents in the last five years: one woman was killed, a truck struck a locomotive, and there were two other very minor accidents. In no case was the railroad charged with negligence. The woman who was killed drove, without stopping, into the path of an approaching train, and no claim

against the railroad company was asserted by her estate. The truck drove into an approaching train and its owner paid the Union Pacific something more than $5,000 for the damage done to its locomotive. This is the history of accidents at the crossing which the majority say stamped it as dangerous. I think it falls far short of showing the crossing was, in physical characteristics, more dangerous than the ordinary country crossing, or that previous accidents there proved there was any dangerous feature in the crossing itself.

As the majority say, the engineer of the train and a brakeman sitting in the fireman's seat testified that the whistle was blown, the bell was ringing, and the head light of the engine was on. In fact, the bell was still ringing when the mile-long train stopped with its caboose in the crossing. No reason to disbelieve the positive, affirmative evidence of the railroad men is suggested except that the appellee and three other witnesses testified they heard no whistle. These witnesses, other than the appellee, were carpenters sitting in an automobile 1700 feet from the crossing waiting for eight o'clock to begin work on a nearby bridge. Whether the windows of the car were up does not appear; but they probably were, as it was cold enough to have the car heater on. The witness Jones said he saw the locomotive headlight on. All three men testified they heard no whistle, and one argued there had been none because he did not hear it. Another, the witness Hougham, was not so dogmatic:

"Q. Did you hear a whistle? A. No, sir.

"Q. Did you hear a horn? A. No, sir.

"Q. Now, can you state definitely whether a whistle or horn was blown? A. No, sir, I don't guess I could say definitely."

Judge Phillips said of a somewhat similar situation in Union Pacific R. Co. v.

Gaede, 110 F.2d 931, 933 (10th Cir. 1940):

"The negative evidence of plaintiff and Schneider that they did not hear the signals could not overcome the positive evidence of the trainmen and disinterested witnesses that the signals were given."

In Chicago & N. W. Ry. Co. v. Golay, 155 F.2d 842, 846, (10th Cir. 1946), this court said:

"* * * Testimony of witnesses merely that they did not hear a whistle or bell is of insufficient probative value to take the issue to the jury when in conflict with positive testimony of other witnesses that the whistle was sounded or the bell rung, unless it further appears, from the circumstances, conditions, and surroundings that they were in position to hear and would probably have heard the sound had it been given. * * *"

With the three witnesses sitting in a car about one-third of a mile from the crossing—probably with the windows closed—saying they did not hear the whistle, it can hardly be said that "the circumstances, conditions, and surroundings" they were in made it appear "they were in position to hear and would probably have heard the sound had it been given." As I have pointed out, one of these three witnesses was frank enough to say that, although he did not hear it, he could not say the whistle had not been blown. I conclude, therefore, that the negative evidence of those who did not hear the whistle, in conflict with the positive testimony of other witnesses that the whistle was sounded, was of insufficient probative value to take the issue to the jury.

I think this case is governed by this court's opinion in Chicago, Rock Island and Pacific R. Co. v. McFarlin, 336 F.2d 1 (10th Cir. 1964), cert. denied 379 U.S. 1001, 85 S.Ct. 721, 13 L.Ed.2d 702 (1965). That case is strikingly similar to this. There it was held that a motorist killed in a grade-crossing accident was contributorily negligent as a matter

of law because she violated the duty, placed upon her by an "unbroken line" of New Mexico decisions, to "stop, look and listen for trains using the tracks, and the act of looking and listening must be performed in such manner as to make it reasonably effective." We said, at page 3:

"* * * Under New Mexico law, she was required to stop her car at a point where, if she looked to the west, it would be effective, and to listen under circumstances which would permit her to hear that which was audible. She could not shut the view from her eyes or the sound from her ears and be relieved of her duty."

The majority attempt to distinguish the *McFarlin* case by saying that the accident here involved happened in Wyoming and that we are not cited to any Wyoming decisions comparable to the unbroken line in New Mexico.

Since a Wyoming motorist approaching an unguarded railroad crossing is, *by statute,* under substantially the same duty to stop, look and listen as that imposed upon his counterpart in New Mexico by the unbroken line of decisions—a fact which I shall later show—I do not see the relevance of the majority's suggestion that there are no Wyoming decisions comparable to the unbroken line in New Mexico. If the suggestion is an intimation that greater caution is required of a motorist approaching a crossing in New Mexico than in Wyoming, it is ill-founded, as the Wyoming statute shows. It cannot be a suggestion that Wyoming does not recognize contributory negligence as a matter of law, because the majority themselves state Wyoming does recognize that doctrine; they say: "The Supreme Court of that state has often said that contributory negligence can be resolved as a matter of law *only in the clearest case.*" (Emphasis supplied.)

I do not know that in this respect Wyoming differs materially from New Mexico or any other state. In all jurisdictions the term "contributory negligence as a matter of law" means contributory

negligence shown by the evidence without substantial contrariety of proof on the issue; that is, "the clearest case." I suggest there can be no clearer case than the one before us: Lumbert started his car and drove upon the tracks in the face of the thundering locomotive which was less than 700 feet from the crossing. Had he looked, he would have seen the impending danger. He says he looked, but did not see the train. There was nothing to impede his vision. The law is that he cannot be heard to say he looked but did not see the locomotive which was in plain view and almost upon him.

This is the rule in Wyoming. In McDowall v. Walters, 360 P.2d 165, 169–170 (Wyo.), rehearing denied Wyo., 361 P.2d 528 (1961), the court said:

> "A motorist cannot say that he looked, but failed to see what was clearly visible, or could have been seen by the exercise of ordinary care. [Authorities cited.] Such a rule was previously affirmed by this court in Chandler v. Dugan, 70 Wyo. 439, 251 P.2d 580, 587, wherein it was said:
>
> " ' * * * The defendant, under the law, is not permitted to say that he did not see when he could have seen by looking. As this Court has said: "A person is presumed to see that which he could see by looking. * * * He will not be permitted to say that he did not see what he must have seen, had he looked."
>
> * * * ' "

So, Lumbert will not be permitted to say he did not see the train which was plainly visible; hence, his assertion to that effect is insufficient, under Wyoming law, to counter the contrary evidence so as to form an issue of fact as to whether he was contributorily negligent. And that assertion is the only thing in the evidence which could be said to raise the issue. This, then, is the "clearest case"—one in which the evidence showed his negligence without contradiction; consequently Lumbert was guilty of contributory negligence as a matter of law.

There can be no dispute about the fact that the approaching train could easily have been seen by Lumbert when he stopped his car just before he reached the crossing; the photograph of the scene to which I have referred demonstrates it beyond cavil. Lumbert's recovery therefore is barred by his failure to look and see the plainly visible approaching train. Of his own volition he left a place of safety and drove into danger; except for that reckless act, he would not have been injured.

I suggest that we are cited to no Wyoming decisions comparable to the unbroken line of New Mexico rulings, not because of any significant difference in the duty of motorists as they approach railroad crossings, but because the matter is so fully covered by statute in Wyoming that its courts have had no occasion to announce a rule such as the New Mexico unbroken line adopted. The rule in the two states is substantially similar.

Sections 31–153, 31–154 and 31–155, Wyo.Stat. (1957), contain the "stop, look and listen" rules for Wyoming motorists at railroad grade crossings. They demonstrate a legislative concern for safety at crossings perhaps greater than the judicial concern shown in the New Mexico decisions. The statutory provision particulary applicable to our situation is § 31–153(a):

> "Whenever any person driving a vehicle approaches a railroad grade crossing under any of the circumstances stated in this section, the driver of such vehicle shall stop within 50 feet but not less than 15 feet from the nearest rail of such railroad, and shall not proceed until he can do so safely. The foregoing requirements shall apply when:
>
> * * * * * *
>
> "(4) An approaching railroad train is plainly visible and is in hazardous proximity to such crossing."

Here the approaching train was "plainly visible" and "in hazardous proximity" to the crossing. Hence the statute commanded that Lumbert, having stopped,

should not proceed until he could do so safely. This, it seems to me, is a requirement as rigid as the New Mexico "stop, look and listen effectively" rule. A Wyoming motorist, who has stopped at a crossing must look and listen effectively in order to decide whether he can proceed safely. Consequently, when Lumbert started his car without seeing a plainly visible train in hazardous proximity to the crossing, he was just as negligent in Wyoming as he would have been under similar circumstances in New Mexico.

Although there was no evidence to warrant it, and although the pre-trial order shows the railroad company contended the doctrine was not applicable, the trial judge instructed the jury on last clear chance. He did, however, leave it to the jury to decide whether the doctrine was applicable.

We do not know whether or not the jury decided the doctrine of last clear chance applied in the circumstances of this case because it returned a general verdict. The majority correctly say a "general verdict is upheld where there is substantial evidence supporting any ground of recovery in favor of an appellee." Thus it is necessary to consider the applicability of last clear chance, and to see whether there is substantial evidence supporting this ground of recovery, as the jury may have based its verdict on that doctrine. There was no evidence whatever upon which it could have grounded a conclusion that the railroad company had the last clear chance to avoid the accident. This is easily demonstrated: The majority say that "the car was seen when the train was about half way between the 'whistling board' and the crossing." The whistling board was 1320 feet from the crossing, so the car was seen when the locomotive was about 660 feet from the crossing. The train was traveling at least 55 miles per hour; at that speed it moved about 80 feet per second and so reached the crossing about 8 seconds after the car was first seen. Obviously it was impossible in 8 seconds to stop the train or to appreciably diminish its speed. The evidence was that a distance of 1¼ miles, or 6600 feet, was required to stop the train. In these circumstances, it is trifling with words to say the engineer could have prevented the accident.

Lumbert's car was not moving when the trainmen first saw it, so he was not then in a perilous position. But the car began to move immediately thereafter and reached the crossing exactly when the locomotive reached it. Lumbert really had the last clear chance to avoid the accident: he should not have started his car when the train, which he could have seen, was just a few seconds away from the crossing.

Be that as it may, the truth is the emergency was so sudden that there was no time for the locomotive engineer to avoid the collision. Thus the doctrine of last clear chance was inapplicable. I quote my own treatment of the subject, which I think is in line with generally accepted principles, in Dean v. Century Motors, 81 U.S.App.D.C. 9, 10, 154 F.2d 201, 202 (1946):

> " * * * The doctrine [last clear chance] presupposes a perilous situation created or existing through the negligence of both the plaintiff and the defendant, but assumes that there was a time after such negligence had occurred when the defendant could, and the plaintiff could not, by the use of means available, avoid the accident. It is not applicable if the emergency is so sudden that there is no time to avoid the collision, for the defendant is not required to act instantaneously."

The majority concede that "[t]here is some doubt whether the record contains evidence to show that the engineer of the train had a 'clear and apparent opportunity'[1] to avoid the accident." They add, however, that "we need not resolve the question" because, although at the close of the evidence the railroad moved for a directed verdict on the ground

---

1. I have shown, I think, that beyond question he had no such opportunity.

that "there is no substantial evidence to support a judgment for the plaintiff," it failed to make express objection to the giving of the instruction on last clear chance. "In such a situation," say the majority, "Rule 51, F.R.Civ.P., precludes consideration of the instruction."

I suggest we do not need to consider the instruction in order to attack the validity of a verdict based upon it. The mere giving of an instruction on last clear chance does not authorize the jury to find a verdict under it, unless there was evidence to support it. So, I cannot agree with the majority's application of Rule 51. As I have said, the railroad company's attorney stated at the pretrial conference that the doctrine of last clear chance was not applicable, and his statement was reflected in the pretrial order. Thus the railroad's statement that the doctrine was inapplicable persisted throughout the trial and was, of course, well known to the trial judge. It was therefore unnecessary to object specifically to the judge's action in giving the last clear chance instruction, which was given despite the company's continuing contention of inapplicability, and despite the fact that the evidence furnished no basis whatever for the charge. Express objection at the time would have told the judge no more about the railroad's position than he already knew, and would have been unnecessarily repetitious.

It is remarked in 2B Barron & Holtzoff § 1104, pp. 463–4 (Wright ed. 1961):

"* * * But Rule 51 is not top-heavy with technical excuses for overlooking trial errors. After all only those errors are waived which might have been corrected had the proper objection or request been made. If the trial judge is fully informed of the specific grounds of objection or request, there is no need for repetition. * * *"

In Evansville Container Corporation v. McDonald, 132 F.2d 80 (6th Cir. 1942),

there was presented to the court the same question we have here about a last clear chance instruction. That was a death action arising from the collision of two motor vehicles. At the end of the trial and before the court instructed the jury, the appellee requested the court to charge specifically on last clear chance. Appellants objected on the ground there was no evidence to support the requested instruction, but nevertheless the trial judge gave the instruction sought by the appellee.

After stating the situation as I have summarized it, the court's opinion continued thus, at page 84:

"Appellants made no further objection and took no exception to the charge as given by the court. After the acceptance of the verdict of the jury, appellants filed motion and grounds for a new trial and therein charged error in the failure of the court to sustain their objections to appellee's special request. Under this state of the record, appellee urges that the point raised by appellants is unavailing."

The court then pointed out that Rule 46, F.R.Civ.P. eliminated the formality of the exception and quoted the following portion of Rule 51, upon which the appellee was depending:

"* * * 'no party may assign as error the giving or failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection.' "

The opinion then proceeded to dispose of appellees reliance on that Rule by saying:

"* * * Applying these rules to the case at bar in the light of their purpose, namely to call the trail court's attention specifically to the parties' requests or objections that they may be considered before the jury is charged,

we are of the opinion that the objections of the appellants were sufficient to support their point that there is no substantial evidence in the record to justify a charge under the last clear chance doctrine. * * *"

From all the foregoing I conclude that, even if it be assumed for the discussion that the railroad company was negligent in all respects charged, Lumbert's negligence in driving into the path of the train which he could have seen, had he looked, was the cause of the accident. His negligence is conclusively shown by the evidence and was not effectively denied, so he should be held to have been contributorily negligent as a matter of law.

I would reverse and remand with instructions to enter judgment for the railroad company, notwithstanding the verdict.