FILED
United States Court of Appeals
Tenth Circuit

October 31, 2013

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

TONY BETTIS; ERIC COMEAU;
STEPHEN SEAT; NATIONAL
REALTY CAPITAL, LLC, a Kansas
limited liability company,

      Plaintiffs-Counter-Defendants -
      Appellees/Cross-Appellants,

v.

GARY L. HALL,

      Defendant-Counter-Claimant -
      Appellant/Cross-Appellee,

and

BENTLEY INVESTMENTS OF
NEVADA, LLC, a Nevada limited
liability company; GARY L. HALL
REVOCABLE TRUST U/T/A DATED
11/16/89,

      Defendants.

Nos. 12-3198 & 12-3200
(D.C. No. 2:10-CV-02457-JAR)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **GORSUCH, HOLLOWAY,** and **HOLMES**, Circuit Judges.

---

    [*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

During the last real estate boom, Gary Hall wanted in. He hired Tony Bettis, Stephen Seat, and Eric Comeau to find him good investment opportunities. In return, Mr. Hall agreed to cover their overhead costs and to give them an equity stake in the deals they spotted. Eventually, though, the real estate boom faded and the parties' relationship soured. As these things go, the disagreement found its way to court.

At trial, Mr. Bettis and his colleagues, as plaintiffs, sought over $1 million from Mr. Hall. They argued this amount represented a combination of unpaid overhead costs and their share of profits derived from several real estate investments. The court, however, refused to admit the plaintiffs' damages calculations, ultimately permitting them to put before the jury a claim for only approximately $600,000. In the end the jury did find for the plaintiffs, but awarded them less still, $302,000.

Neither side is happy with the result.

For his part, Mr. Hall takes issue with the idea that the plaintiffs could recoup anything for two particular investments — the so-called Grand Lodge and SWAT 15 projects. Mr. Hall claims that the Grand Lodge project resulted in no profit for anyone, and that the SWAT 15 project was not a development project subject to the parties' agreement. On appeal, however, Mr. Hall doesn't contest the district court's decision to admit evidence about these two projects. Instead, he argues only that he is entitled to judgment or a new trial because the evidence

in the record as a whole is insufficient as a matter of law to support the jury's verdict of $302,000.

When a jury's verdict is challenged on appeal for its legal sufficiency, "our review is limited to determining whether the record — viewed in the light most favorable to the prevailing party — contains substantial evidence to support the jury's decision." *Bangert Bros. Constr. Co., Inc. v. Kietwit W. Co.*, 310 F.3d 1278, 1292 (10th Cir. 2002). For purposes of this analysis, moreover, "[s]ubstantial evidence is something less than the weight of the evidence, and is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, even if different conclusions also might be supported by the evidence." *Id.*

This standard poses a problem for Mr. Hall. As the district court explained, even if we assume (without deciding) that Mr. Hall is right and no jury could have lawfully awarded damages on the Grand Lodge and SWAT 15 projects, the record *still* contains enough other, unchallenged (substantial) evidence to support an award of $302,000. *See* D.Ct. Mem. and Order at 6-8 (June 28, 2012). Put differently, the jury in this case issued a general verdict and even putting aside the damages the plaintiffs sought for the two challenged projects enough undisputed evidence remains in the record to support the verdict. Neither are we at liberty to overturn a general verdict supported by substantial evidence based on speculation that it *might* include amounts for the two projects still in dispute. It is

long-settled law that "a general verdict [must be] upheld where there is substantial evidence supporting *any ground* of recovery in favor of an appellee." *Union P. R.R. Co. v. Lumbert*, 401 F.2d 699, 701 (10th Cir. 1968) (emphasis added).

Perhaps if Mr. Hall had sought and received special interrogatories asking the jury to assign damages to specific projects, we could weed out the damages attributable to the two projects he still contests. Perhaps if Mr. Hall had attempted and succeeded in showing that the jury could not have arrived at its general verdict without relying on amounts attributable to the Grand Lodge and SWAT 15 projects we could grant him relief even from this general verdict. But neither of these possibilities is present in this case.

For their part, Mr. Bettis and his colleagues challenge the district court's *in limine* rulings forbidding them from presenting evidence at trial in support of their preferred (higher) damages calculations. But we review a district court's evidentiary rulings only for abuse of discretion. "[W]e will not disturb the [district court's] determination absent a distinct showing it was based on a clearly erroneous finding of fact or an erroneous conclusion of law or manifests a clear error of judgment." *Cartier v. Jackson*, 59 F.3d 1046, 1048 (10th Cir. 1995).

We cannot say nearly so much here. At summary judgment, the district court explained its interpretation of the parties' contracts and how it expected any damages claim would be calculated and presented at trial — all based in large

measure on the plaintiffs' own representations about the contracts and their own numerical calculations. A month later, when presenting their exhibit list, plaintiffs sought to present new and higher damages calculations without an explanation why these new calculations were correct in light of the district court's summary judgment order. Mr. Hall sought to exclude the new damage figures; plaintiffs responded, but still failed to explain the rationale behind their new calculations. The district court ruled in favor of Mr. Hall. Plaintiffs then sought reconsideration of the district court's order, just weeks before trial. It was at this point when plaintiffs explained how their new figures were based on a new theory about how the parties' course of dealing deviated from the contracts the court interpreted at summary judgment. The district court found as a matter of fact that the plaintiffs could have presented their new, alternative course-of-dealing theory much earlier in the proceedings — and that allowing the plaintiffs to introduce that new theory and those new numbers at trial after disclosing them so late in the day would prejudice Mr. Hall's ability to defend himself. In these circumstances, the court then decided to hold the plaintiffs at trial to their own prior representations and calculations.

We are given no persuasive reason to think the facts undergirding the district court's assessment are clearly erroneous, or that its ultimate decision otherwise amounts to a clear error of judgment. To the contrary, "[i]t is generally not an abuse of discretion for a court to exclude evidence based upon failure to

timely" present it. *Santana v. City & Cnty. of Denver*, 488 F.3d 860, 867 (10th Cir. 2007) (citing authorities); Fed. R. Evid. 403 (relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice").

The judgment of the district court is affirmed.

ENTERED FOR THE COURT

Neil M. Gorsuch
Circuit Judge

12-3198 & 12-3200, *Bettis v. Hall*

**HOLMES**, Circuit Judge, concurring.

I fully join the portion of the principal opinion that resolves Mr. Hall's appeal (No. 12-3198). I concur in the judgment regarding its resolution of the cross-appeal (No. 12-3200) of Mr. Bettis and his colleagues ("Appellees"). The parties are familiar with the relevant facts; so, I will not pause to recite them here. In my view, the principal problem for Appellees is not that they presented a new damages theory to the district court weeks before trial. I respectfully disagree with the principal opinion's reading of the record on this point. In particular, as I read the record, from at least as early as the summary-judgment phase of the litigation, Appellees expressly endorsed a theory that later formed the basis for the imbroglio close to the time of trial—the so-called allocation theory. And they presented figures to the district court in the summary-judgment phase predicated on this theory.

These figures are referred to in this litigation as the Bentley Books calculations. Appellees expressly represented to the district court in their briefing at the summary-judgment phase that those calculations were the correct ones, without clearly indicating their view that those calculations were tied to the allocation theory. In its summary-judgment order, however, the district court rejected Appellees' allocation theory and opted for the so-called aggregation theory. Proceeding on Appellees' general representation that the Bentley Books

calculations were the correct ones, the district court ordered Appellees to calculate damages using those figures, but applying the *aggregation* theory.

Seemingly recognizing that they were stuck with the aggregation theory, about a month before trial, Appellees submitted new, higher damages figures to the district court that reflected a deviation from the Bentley Books calculations that Appellees previously had endorsed. Mr. Hall successfully moved to exclude these new figures. Appellees had responded to his motion, but they had not explained to the district court their apparent rationale for abandoning the Bentley Books calculations. That is, they had not explained that, in their view, those calculations were predicated on the allocation theory and the district court had rejected that theory at the summary-judgment phase. The first time that they offered such an explanation to the district court was in a motion to reconsider the district court's ruling on Mr. Hall's motion to exclude; this reconsideration motion was filed a mere two weeks prior to trial.

In my view, even if Appellees were correct in objecting to the district court's requirement that they employ the Bentley Books calculations under an aggregation theory, this objection came way too late in the game, and through an inappropriate procedural vehicle—a motion to reconsider, *see, e.g.*, *In re Motor Fuel Temperature Sales Practices Litig.*, 707 F. Supp. 2d 1145, 1166 (D. Kan. 2010) (noting that motions for reconsideration are not appropriate if movant only wants the court "to hear new arguments or supporting facts that could have been

presented originally"). To the extent that the district court erred in requiring Appellees to adhere to the Bentley Books calculations under an aggregation theory, as I see it, that error was invited, and thus Appellees' challenge is waived, *see Eateries, Inc. v. J.R. Simplot Co.*, 346 F.3d 1225, 1229 (10th Cir. 2003) (noting that the "invited error doctrine" is an equitable doctrine that "prevents a party from inducing action by a court and later seeking reversal on the ground that the requested action was in error" (citations omitted) (internal quotation marks omitted)); *see also ClearOne Commc'ns, Inc. v. Bowers*, 643 F.3d 735, 771 (10th Cir. 2011) (noting that "[t]he invited-error doctrine precludes a party from arguing that the district court erred in adopting a proposition that the party had urged the district court to adopt" (quoting *FTC v. Accusearch Inc.*, 570 F.3d 1187, 1204 (10th Cir. 2009)) (internal quotation marks omitted)). This possible outcome is one that the district court apparently anticipated. *See* Aplt. App. at 207 ("Now, I understand that plaintiff says the calculations . . . are wrong because plaintiff says the examples in the summary judgment order . . . are wrong. But I want the record to be clear that if they're wrong, it's not because the Court made an error, it's because that was the record that was provided to the Court.").

In sum, I fully join the portion of the principal opinion that resolves Mr. Hall's appeal, but am constrained to only concur in the judgment regarding its resolution of Appellees' cross-appeal.